## CHARLES H. HEINLEIN *vs.* BOSTON AND PROVIDENCE RAILROAD COMPANY.

Suffolk.    March 6, 1888. — May 8, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, & C. ALLEN, JJ.

*Personal Injuries — Railroad Premises — Licensee — Trespasser.*

If a person enters a railroad station in the evening to take a train, and, after finding that the last train has gone, remains therein for his own convenience several minutes longer, during which the station-master, the usual closing time having arrived, puts out the lights, he becomes at most a mere licensee, and cannot recover for injuries sustained in leaving the station by reason of the extinguishment of the lights.

TORT for personal injuries sustained by the plaintiff at the defendant's station in Roxbury.

At the trial in the Superior Court, before *Bacon,* J., evidence was introduced tending to prove that on the evening of October 12, 1885, the plaintiff, at about eleven o'clock P. M., in company with his cousins, Emil Seiffert and Charles H. Heinlein, started for the Roxbury station, the plaintiff intending to take the last train on the defendant's road into Boston at 10.45 P. M.; that the Roxbury station is situated between Tremont Street and the railroad, doors opening out upon the street and upon a platform along the tracks; that the plaintiff relied on Seiffert, who was familiar with the trains; that they entered the men's waiting-room of the station, and found the station agent there clearing up the station; that they asked him no questions about the train; that after being there about two minutes Seiffert told the plaintiff that the train had gone, and that he would have to take a horse car; that they stayed in the waiting-room several minutes after finding out that the last train had gone, and then started to go out of the door leading to Tremont Street, but found it locked, and turned round to go out of the door leading to the platform; that of the lights in the station one was in the ticket office, which adjoined the waiting-room and had a bay window projecting into the platform; that the light in the ticket office was inside of the bay window, and when burning lighted the door and a step between it and the platform; that the only other light in the waiting-room was opposite the door leading to the platform, which threw some light on the step when the door was open; that while the plaintiff was crossing the waiting-room to go out of the door to the platform, the station agent, without any warning, suddenly extinguished the light in the ticket office and the remaining light in the waiting-room; that an electric lamp brightly lighted the platform, but the step was in the deep shadow of the projecting bay window; and that the plaintiff's heel caught on the step, which he did not see on account of the shadow, as he stepped out from the door, and he fell forward and against a train of the defendant's then passing the station, and received the injuries alleged; and that the defendant's servant at the station gave him no warning of the coming train.

The plaintiff testified, on direct examination, that he went to the Roxbury station to take the train into Boston; that he there found that the last train had gone; that he then waited around there "for a minute or two" before he started to leave the station, as above described, and was injured. On cross-examination, he testified that it was "three minutes, or something like that," before it occurred to him that the train had gone, during which he did not ask the station agent when the train was coming along; that he "stayed there three or four minutes" after he was told that he was too late for the train; that "I was waiting for a horse car after I found the train had gone, I did not go there for a horse car"; and that in going out of the door he did not see the step, but in trying to step over the shadow he tripped and fell.

Charles H. Heinlein, the cousin of the plaintiff, testified that, when they went into the station, "My cousin Emil looked around, I supposed looking for a clock. He told us that the train had gone, so he said we would have to wait; then the only way my cousin could get in was to take the horse cars. So we thought we could wait in the depot until one came along."

On the above facts the judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*N. U. Walker*, for the plaintiff.

*G. Putnam & T. Russell*, for the defendant.

DEVENS, J.    The plaintiff entered the waiting-room of the defendant's station in Roxbury, intending to take the last evening train for Boston, for which one of two friends who accompanied him had informed him he was in time. In fact, it had been gone some fifteen minutes. With his friends, the plaintiff remained "three minutes, or something like that," as he stated on cross-examination, or "about two minutes," as other witnesses stated, in conversation with them. The station agent was there clearing up the station, but no inquiries were made of him or any one on the subject of the train. At the end of this time, the plaintiff was informed by his friend that the last train to Boston had gone, and that he would have to take a horse car. He waited "a minute or two," as he states in his examination in chief, or "three or four minutes," as he states in his cross-examination, in the defendant's station. He further testified:

" I was waiting for a horse car after I found the train had gone; I did not go there for a horse car." One of those who accompanied him states that, after being informed that the only way the plaintiff could get in to Boston " was to take the horse cars," adds, " We thought we could wait in the depot until one came along." At the expiration of the time which the plaintiff had waited, after being informed that the last train had gone, whether it was " one or two minutes," or whether it was " three or four," he determined to leave the station. He then found that the door leading to the street, by which he had entered, was locked, and he crossed the waiting-room to go out by the door leading to the platform. At this time, the lights in the ticket office and waiting-room were extinguished, by which some light was thrown upon the door or step leading to the platform, which platform was then lighted by an electric light which left the step in shadow. There was evidence that the plaintiff was injured by reason of the insufficient light on this step. Whether there was sufficient evidence that he was in the exercise of due care, as he stepped out towards the platform, was in dispute.

It is the contention of the plaintiff, that he was on the premises at the invitation of the defendant, and that the company was bound to see that its premises were in such condition, in all respects, that such a person, in the exercise of ordinary care, could leave them without injury, and that this extends to and embraces proper and suitable platforms, steps, and walks, as well as suitable lights. The only obligation that the defendant could have been under to the plaintiff was that which it owed to one intending to become a passenger in one of its trains, who would have a right to use the waiting-room for a reasonable time before the arrival of the expected train, or to one who sought information as to the time of departure or arrival of trains in which he was interested. Admitting that as to such persons there was a duty such as is claimed by the plaintiff owing from the defendant, by reason of an implied invitation on its part to enter the waiting-room in which the ticket office was situated, and without discussing whether, in view of the fact that there was to be no train such as he desired, and that he remained for two or three minutes without making any inquiry, the plaintiff could, up to the time that he was informed that there was no

train such as he desired, be held to have the rights of an intending passenger, or of a person seeking information, we are of opinion that after that time he had no such rights, if he continued to remain in the station after he had full opportunity to leave it.

While the defendant could, of course, do him no wanton injury, it had a right to conduct its business in the ordinary way, without regard to his comfort or convenience. When he arrived, he found the station-master clearing up the station, the time for closing it had arrived, and, if the plaintiff saw fit to linger, the defendant's servants had a right to proceed to close the station and extinguish the lights. There was ample time for him to have retired while the light in the waiting-room was burning. This room was not a place where every one might resort and use it for his own business, and he could not expect that it, or the way out of it, would be kept lighted until the arrival of the horse car for which, as he states, he waited. Whether, after he knew that there was no railroad train for him, he is to be considered a trespasser or a mere licensee, is not important. He could have no higher character than the latter. There was no allurement or inducement held out for him to remain, and if he did so, it was at his own risk. In order that it may be held that, thereafter, the defendant owed any duty to him, it should be shown, not merely that it or its servant acquiesced in his remaining, and permitted it when his only possible business had been concluded, but that it was in accordance with their invitation, or with the intention and design with which the waiting-room was prepared to be used. Of this there was no evidence.

The plaintiff urges, that the inquiry should have been submitted to the jury, as a question of fact, whether he remained an unreasonable time, or for an unauthorized purpose. On the plaintiff's own statement, three or four minutes elapsed before the light in the station was put out, and during this time he had remained for his own convenience. Upon these facts a verdict that he had remained only a reasonable time, or for an authorized purpose, would not have been justified. Nothing was shown to have been done wilfully or wantonly to the injury of the plaintiff, and upon these facts the presiding judge properly ruled that he was not entitled to recover.

In this view of the case, it is unnecessary to inquire whether there was sufficient evidence that the plaintiff himself was in the exercise of due care in the manner in which he left the station.                                    *Exceptions overruled.*