# THE MISSOURI PACIFIC RAILWAY COMPANY v. NANCY J. NEISWANGER.

1. PERSONAL INJURIES—*Damages—Negligence—Conclusive Verdict.* The plaintiff, a woman about fifty-two years of age, arrived at the railway company's station house in the city of Beloit before dark on May 6, 1886, intending to become a passenger on the defendant's westward-bound train, and purchased a ticket for that purpose. The station platform was about three feet high from the ground, and there were steps at the west end which she passed over in going from the ground to the platform. She remained at the station waiting for her train to arrive until after dark. The train was delayed, and it was not known when it would arrive. There were no water-closets or other like conveniences in or about the station house, and it became necessary for her to retire from the station house and from the platform. There was a public street at the west end of the platform, and she passed toward the east end. It was dark, and there were no artificial lights upon the platform or outside of the station house; but there was sufficient natural light to enable her to see the platform and to see the ground. When she arrived at the east end of the platform she saw the edge of the platform and saw the ground, and believing that they were upon the same level, she attempted to step from the platform to the ground; but the ground being about three feet below, she lost her balance and fell to the ground, causing the injuries for which she sued the railway company in this action. The case was tried before the court and a jury, and the jury rendered a verdict in favor of the plaintiff and against the defendant for damages. *Held,* That the questions as to whether the defendant was guilty of negligence, and whether the plaintiff was guilty of contributory negligence, were proper questions for the jury, and that their verdict upon these questions is conclusive.

2. EVIDENCE—*Introduction, Not Error.* On the trial of the case the court permitted the plaintiff to introduce evidence tending to show

that other persons had also fallen from the same portion of the platform where the plaintiff fell, and under circumstances of a similar character. *Held*, Not error.

3. DEPOSITION, *Read in Evidence*—*No Error.* The court also permitted the plaintiff to read the deposition of a woman, taken in the same city where the trial was had, and only one day before the trial, and without any showing being made that the oral testimony of the witness could not be procured; but no objection was urged against the deposition for these reasons, and the reasons that were given for the objection that was urged against the deposition were not sufficient. *Held*, Not error in permitting it to be read in evidence.

### *Error from Osborne District Court.*

ACTION to recover damages for personal injuries. Judgment for plaintiff *Neiswanger* for $5,200, at the February term, 1887. The defendant *Company* brings the case to this court. The material facts appear in the opinion.

*Waggener*, *Martin & Orr*, for plaintiff in error.

*A. H. Ellis*, and *Walrond, Mitchell & Heren*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Osborne county by Nancy J. Neiswanger against the Missouri Pacific Railway Company, to recover for personal injuries alleged to have been caused through the negligence of the defendant at the city of Beloit, Kansas. The case was tried before the court and a jury, and the jury rendered a general verdict in favor of the plaintiff and against the defendant, and assessed her damages at $5,200. The jury also made numerous special findings upon interrogatories submitted to them by the court at the request of the defendant. Judgment was rendered in favor of the plaintiff and against the defendant for $5,200, and the defendant, as plaintiff in error, brings the case to this court and asks for a reversal of such judgment.

The facts of this case appear to be substantially as follows: On May 6, 1886, and at about 5 o'clock P. M., the plaintiff, who resided at Osborne, and who was on her way home, ar-

rived by way of the Solomon Branch of the Union Pacific Railway at the city of Beloit. She immediately went to the depot or station of the defendant at that place. This depot or station is situated on the south side of the railway tracks, which at that place run east and west. The station house is a frame building, and has a platform all around it from ten to fourteen feet wide. This platform is about three feet high from the ground. At the west end thereof, and near the northwest corner, there are steps four or five in number and from six to eight feet in length, to enable persons to pass from the ground to the platform and from the platform to the ground. At the east end of the platform there is an inclined plane of gradual descent from six to ten feet wide extending eastwardly about fifty feet, intended, among other things, for the same purpose as the steps at the west end. The ladies' waiting-room is near the middle of the building, with a door on the north side opening from the north platform. When the plaintiff arrived at the depot she inquired of the company's agent when the next train going west to Osborne would leave, and he told her that it would leave at 9:20 P. M. Shortly afterward her husband arrived from the west to meet her and to return home to Osborne with her. He purchased tickets for himself and her to Osborne, and they checked their baggage to that place. They then left the depot and took a walk through the city, returning to the depot "about dusk," where they remained waiting for their train. The plaintiff at each time in going to and from the station passed over the steps at the northwest corner of the station platform. The train on which the plaintiff expected to travel in going from Beloit to Osborne did not arrive at 9:20, and it would seem that no one knew when it would arrive; so the plaintiff, with several other passengers, continued to remain at the station waiting patiently for the train to come. At about 11 o'clock that night it became necessary for the plaintiff to retire, and as there were no water-closets or other accommodations of that kind in or about the depot building, it became necessary for her to leave the building, which she did. Two other ladies accompanied her, one

with whom she was slightly acquainted, but who had no more knowledge of the depot and its surroundings than the plaintiff had, and the plaintiff virtually had none. The other woman was an entire stranger to the plaintiff, but she had some slight knowledge of the place; but the plaintiff at the time did not know it. No inquiry was made of any agent of the railway company, nor was any such agent present or in sight, and the ticket office was closed. The woman passed out of the door of the ladies' waiting-room onto the north platform, the plaintiff being in the lead. At the west end of the platform, and of the depot, was a public street. Hence they passed eastwardly to the east end of the platform. There were no artificial lights at this place, and indeed none outside of the depot building, and none in the building except some dim lights. There was just enough natural light, however, outside of the building to enable the plaintiff to see the platform and to see the ground, and she could distinguish the one from the other. When she arrived at the platform at the east end of the building, she then walked a few steps southwardly, and then again eastwardly. She saw the east edge of the platform and the ground east of the same, and believing that they were upon a level stepped from the platform intending to place her foot upon the ground, but the ground being three feet below, she lost her balance and fell to the ground, causing the injuries of which she now complains. The two ladies were still with her, and just behind her when she fell. This fall occurred about five feet south of the inclined plane above mentioned. The plaintiff had never before been at this part of the platform. She was picked up and carried into the depot building, where she remained until the train arrived, which was shortly after 12 o'clock that night. She was then placed upon the west-bound train and taken to her home in Osborne. She was then between 52 and 53 years old. Afterward, and on August 9, 1886, she brought this action to recover damages for the injuries which she received by falling from the depot platform as aforesaid.

It is claimed by the plaintiff in error, defendant below,

that no cause of action was alleged or proved by the plaintiff below in this case. Now if the facts as above stated constitute a cause of action, then we think a cause of action was both alleged and proved. The petition of the plaintiff below is in some particulars defective in not stating the facts constituting her cause of action in greater detail and with a more minute and circumstantial particularity; but the petition was not properly objected to or attacked for this reason. No motion was made to require the petition to be made more elaborate or more definite and certain, nor to require that any of its allegations should be made more specific and explicit; nor was it attacked by any written motion or objection, nor even by a demurrer. Under the circumstances we think the petition was and is sufficient, provided the facts of the case as therein stated and as developed by the evidence are themselves sufficient to constitute a cause of action. Among the several allegations contained in the petition are the following: The plaintiff went to the defendant's depot as a passenger and purchased a ticket. The platform at that place was three feet high; it was in the night and dark when the injuries occurred; no sufficient lights nor any information was furnished; the ticket office was closed, and no agent of the defendant was present from whom any information could be obtained; and the defendant was negligent in not providing *"suitable accommodations* for passengers and others entitled thereto." The petition, in fact, alleged that the darkness was greater than the evidence showed it to be. The petition also alleged negligence generally on the part of the defendant, and that the plaintiff was without fault. The only question then is whether the facts as alleged and proved and as above stated constitute a cause of action. The plaintiff in error, defendant below, claims that they do not, and this for the reason that they do not show any negligence on the part of the defendant below, and do show culpable contributory negligence on the part of the plaintiff below. We think the plaintiff in error is mistaken. In our opinion the defendant below was unquestion-

**1. Personal injuries—damages—negligence—conclusive verdict.** ably guilty of culpable negligence, and we cannot say that the plaintiff below was guilty of any culpable contributory negligence, and the jury found that the defendant was guilty of culpable negligence and that the plaintiff was not; and the verdict of the jury upon these questions is conclusive. (*McKone v. Mich. Cent. Rld. Co.*, 51 Mich. 601; same case, 13 Am. & Eng. Rld. Cases, 29; *Buenemann v. St. P. M. & M. Rly. Co.*, 32 Minn. 390; same case, 18 Am. & Eng. Rld. Cases, 153, 155, note, and cases there cited; *Keefe v. B. & A. Rld. Co.*, 142 Mass. 251; same case, 27 Am. & Eng. Rld. Cases, 137; *B. & O. Rld. Co. v. Rose*, 27 Am. & Eng. Rld. Cases, 125, 130, note, and cases there cited; *A. & G. S. Rld. Co. v. Arnold*, 84 Ala. 159; same case, 30 Am. & Eng. Rld. Cases, 546, 555, note, and cases there cited; *Moses v. L. N. O. & T. Rld. Co.*, 39 La. An. 649; same case, 30 Am. & Eng. Rld. Cases, 556; *Bennett v. L. & N. Rld. Co.*, 102 U. S. 577; same case, 1 Am. & Eng. Rld. Cases, 71; *Stewart v. I. & G. N. Rld. Co.*, 53 Tex. 289; same case, 2 Am. & Eng. Rld. Cases, 497; *Cross v. L. S. & M. S. Rly. Co.*, Mich., 37 N. W. Rep. 361; *St. L. I. M. & S. Rly. Co. v. Fairbairn*, Ark., 4 S. W. Rep. 50; *Patten v. C. & N. W. Rly. Co.*, 32 Wis. 524; *Beard v. C. & P. R. Rld. Co.*, 48 Vt. 101; *B. & O. Rld. Co. v. The State*, 60 Md. 449; *Buffett v. T. & B. Rld. Co.*, 40 N. Y. 168; *McDonald v. C. & N. W. Rly. Co.*, 26 Iowa, 124; *Martin v. G. N. Rly. Co.*, 16 Common Bench, 179; *Birkett v. W. H. J. Rly. Co.*, 4 Hurl. & Nor. 729.)

For a railway company to construct a platform around its station house three feet high from the ground, inviting passengers and others to enter upon its premises, many of whom are strangers to that locality, and then to keep them waiting at that place for a delayed train from nine o'clock at night until after midnight, without water-closets or other such necessary accommodations, without lights for the platform, or any lights except some dim lights within the station house, without guards or railing for the platform, and without in-

formation concerning the character of the premises, is certainly culpable negligence as toward passengers who are not acquainted with the premises, and who are there waiting for such delayed train to arrive to carry them to their destination, and who in the meantime find it necessary to retire from the station house and from the platform.   But the defendant urges most strenuously that the plaintiff was guilty of culpable contributory negligence; and it cites various authorities, the most favorable of which to its side of the question are the following: *Reed v. R. & A. Rld. Co.*, 84 Va. 231; same case, 33 Am. & Eng. Rld. Cases, 503; *Forsyth v. B. & A. Rly. Co.*, 103 Mass. 510.   But upon reason and great weight of authority, we think the plaintiff was not guilty of any culpable contributory negligence.   See the numerous cases above cited. Surely, as a question of law, we cannot declare that she was guilty of any such negligence, and the jury declared as a matter of fact that she was not.   What more should she have done than she did ?   Should she have created a sensation by hunting for the secluded and possibly sleeping agent of the railway company to obtain a light or to procure information, or when she arrived at the edge of the platform should she have got down upon her knees and felt with her hands to ascertain whether the platform and the ground were upon the same level, or not?   The jury did not think that she was required to do these things, and their verdict is final.

It is claimed, however, that she ought to have known that the platform was elevated very much above the level of the ground, for the reason that when she first arrived at the station it was still daylight.   It appears that prior to the accident she went to and from the platform, but only to and from the west end; and it does not appear that she ever saw or was ever at the east end until the very moment when the accident occurred; and it would seem that with her slight knowledge of the platform she should not be required always and necessarily at her peril to retain in her actual consciousness the exact condition of the entire platform, nor should she be so required, even if at some time prior to the accident she did have full

and actual knowledge of the platform and its condition.  At the time of the accident she saw the platform and saw the ground, and believed that they were upon the same level, and trusting to her senses and to her supposed perceptions, she stepped from the platform and fell, and the jury found that in doing so she was not guilty of any culpable contributory negligence, and their findings upon this subject must now be considered as conclusive.  See the authorities above cited.

The plaintiff·in error, defendant below, further claims that the court below erred in permitting testimony of two witnesses to be introduced showing that two other persons, a man and a woman, had also fallen from the same portion of the platform under circumstances of a similar character.  Such evidence was competent.  (*City of Topeka v. Sherwood*, 39 Kas. 695, 696, and cases there cited; *Morse v. M. & St. L. Rly. Co.*, 30 Minn. 466, 471, 472, and cases there cited; same case, 11 Am. & Eng. Rld. Cases, 168, 172, 173, and cases there cited.)  Such evidence tended to show that the place was unsafe and dangerous.  (*Dist. of Columbia v. Armes*, 107 U. S. 519, 524, 525, 526, and cases there cited.)

2. Evidence—introduction, not error.

There is a further objection urged against the testimony of one of such witnesses, to wit, Lydia S. Walrath.  Her testimony was embraced in a deposition, and the objection now urged against the deposition is that it was taken in the same city in which the trial was had and only one day before the trial, and that no showing was made that the oral testimony of the witness could not be procured.  No such objection as this was made in the court below, and probably the court below never considered or thought of any such objection.  The only objection urged in the court below against the deposition as a whole was as follows:

"Objection taken by defendant to the entire deposition on the grounds that same is incompetent, irrelevant and immaterial, and not within the issues in this case; and on the further ground that the same is hearsay in its character, and that no foundation has been laid for the evidence; also that it is

too remote; also upon the ground that it does not appear from said deposition that the said defendant, or any of its agents, servants, or employés, had any notice or knowledge of the circumstances set forth in said deposition. Objection to the introduction of the deposition as a whole overruled, to which ruling of the court the defendant excepts."

If the objection which is now urged had been urged in the court below, it would have been error for the court below to have permitted any part of the deposition to be introduced in evidence; but no such objection having been urged in the court below nor fairly covered by the objection that was urged, we cannot say that the court below committed any error in permitting a part of the deposition to be read in evidence. The grounds for the objection interposed in the court below are substantially the same as the defendant generally interposed where it objected to the testimony of witnesses, and the objection urged in the court below was evidently intended to apply only to the *evidence as evidence* embodied in the deposition, and not to the fact that the deposition was not filed in time or that no showing was made that the oral testimony of the witness could not be procured. The part of the deposition which was read in evidence scarcely had any materiality in the case. The facts which it tended to prove were amply proved by other testimony. The testimony read from the deposition was to the effect that Mrs. Walrath had fallen when it was dark from the same place from which the plaintiff fell, and it was introduced for the purpose of showing that such place was unsafe and dangerous; and taking the facts and circumstances of the case as they were unquestionably proved by the other evidence, we would think as a matter of law that the place where the plaintiff fell was under the circumstances unsafe and dangerous. Besides, the other evidence also proved that a woman whose name was not shown, but who was presumably Mrs. Walrath, fell from that place. But upon the objection made to the introduction of this deposition in evidence in the court below, we do not think that the court below erred in permitting a part of the deposition to be introduced in evidence.

*3. Deposition, read in evidence — no error.*

We do not think that it is necessary to discuss any of the other points presented by counsel. In our opinion no material error was committed by the court below, and therefore the judgment of the court below will be affirmed.

All the Justices concurring.