HENRY KLUGHERZ v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY.[1]

June 19, 1903.

Nos. 13,433—(135).

**Injury to Person at Railway Station.**

A railroad company was unloading a gravel train standing upon a track which formed a curve adjacent to its depot grounds.   The unloading was done by means of a plow at one end of the train, propelled by a locomotive at the other, connected by a steel cable which was kept over the cars by means of pulleys and stay ropes fastened to the sides of the cars on the outer line of the circle.   While in operation, one of the stay ropes broke, releasing the cable, which struck respondent, who was standing near the depot, causing injury.   *Held*:

1. If respondent was upon the premises in good faith, in pursuance of the purpose of meeting for business consultation a person whom he had reason to believe was to take a train, the company owed him the duty of ordinary care in conducting the unloading operations.

2. It was error to instruct the jury that, if respondent was upon the premises for a lawful purpose at the time claimed, appellant owed him the duty of ordinary care.

3. It was not error to receive evidence as to the manner of starting the engine, and in regard to the character of the rope for such use.

Action in the district court for Blue Earth county by plaintiff in behalf of and for the benefit of Clements Klugherz, his minor son, to

[1] Reported in 95 N. W. 586.

90 M.—2

recover $1,900 for personal injuries. The case was tried before Cray, J., and a jury, which rendered a verdict in favor of plaintiff for $1,558.35. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed, and new trial granted.

*Pfau & Pfau* and *H. H. Field,* for appellant.

The negligence alleged in the complaint was the use of an unsound and unsuitable rope and the negligent fastening of the cable to the car by means of such rope and tackle, by reason whereof, when the rope broke, the cable suddenly flew to a straight line between its points of attachment. There was no allegation of negligence in respect to the operation of locomotive or cable or to failure to give warning to persons on the premises.

Persons visiting railway stations from motives of curiosity or to see passing trains are mere licensees to whom the railway company owes no duty, except to avoid wilful injury, and in the absence of gross negligence or wilful injury they cannot recover for injuries resulting from the condition of the premises or the operation of trains. Thompson, Comm. Neg. §§ 1004, 2687; Gillis v. Pennsylvania, 59 Pa. St. 129; note to 21 Am. & Eng. R. Cas. (N. S.) 314.

For the distinctions between active and passive negligence see Plummer v. Dill, 156 Mass. 426, and authorities cited; Schreiner v. Great Northern Ry. Co., 86 Minn. 245.

*Young & Lossow,* for respondent.

LEWIS, J.

Appellant company was engaged in filling a hole on the northerly side of its depot in the city of Mankato, and for such purpose had constructed a temporary track upon which it ran a gravel train and unloaded the gravel by means of a plow. The track at this point was upon a curve, and the plow was placed on the northerly end of the gravel train, one end of a long steel wire cable was attached to the plow, and the other end was fastened to a locomotive at the southerly end of the train, and because of the curvature of the track it was necessary to fasten the cable over the middle of the cars so that the plow would follow them. The cable was kept in place by means of pulleys.

some distance apart, fastened with ropes to the side of the cars upon the outer arc of the circle, and the cable passed through these pulleys. A straight line drawn from the plow to the locomotive touched the outhouse and the corner of the depot.

About four o'clock in the afternoon, respondent, a boy of fourteen years, was standing in the depot grounds at a point about one-third of the distance between the corner of the depot and the outhouse, which was about twenty feet from the depot. The locomotive was started in motion to begin the process of plowing the gravel from the cars, when, at a point nearly opposite the depot, one of the ropes broke, releasing the cable, which, with the action of the engine, violently straightened, struck the corner of the depot and the outhouse, and also respondent, causing him serious injury. Respondent secured a verdict in the court below, and this appeal involves the question whether, under the circumstances, appellant was called upon to exercise ordinary care; also the correctness of certain rulings of the court.

The liability of the company turned upon the nature of the relation existing between it and respondent at the time of the accident. If respondent was a trespasser upon appellant's property, then it owed him no duty except to refrain from those acts commonly denominated "wilful," but there is no claim in this case that any such degree of purpose was manifest. It is claimed that under the great trend of authorities, if respondent was upon the premises as a mere licensee, appellant owed him no greater degree of care than if he had been a trespasser.

By a "mere licensee" is meant the tacit permission or privilege which a person has of entering upon the premises of another, but without any invitation, express or implied. Under such circumstances a person enters at his own risk, and, the owner having assumed no responsibility in respect to the conduct or care of such trespasser or licensee, must take the premises in the condition in which he finds them. But where the owner, either expressly or by implication, invites a person to go upon his premises, there arises at once the obligation to use ordinary care to see that the person thus invited shall not be injured. This duty arises from the nature of the contract. It is reasonable for the person invited to assume that the owner will use ordinary prudence to protect him while acting in pursuance of the invitation.

No great difficulty has arisen in applying this principle to private parties, but there has been much discussion, and some difference of opinion, with reference to the obligations of public and quasi public corporations as to persons in and around their premises, such as station houses and depot grounds. It is generally claimed by such corporations that station houses and depot grounds are primarily their properties, to be used for their purposes, and that the public has no rights connected therewith except in the transaction of business with the owners. There has been a difference of opinion as to what constitutes such business. It will not be disputed that the public has the right to enter stations, and, so far as reasonably necessary, depot grounds, for the purpose of taking trains and alighting from them, and making inquiries at the offices of the depot during business hours for the purpose of obtaining information and transacting business with the officers or agents in charge; but some courts have limited to a very narrow compass the time within which a passenger may enter such premises for the purpose of awaiting the arrival of trains. Pennsylvania v. Martin, 111 Fed. 586, 49 C. C. A. 474.

Controversy has often arisen where a party injured had, or claimed to have, some business relations directly with the company, and the question at issue was whether, under the circumstances existing at the particular time, the company was under obligations to exercise ordinary care for his protection. It has been held that where a person entered a railroad station in the evening to take a train, and, after finding that the last one had gone, remained there for his own convenience for some time, during which the station master put out the lights at the usual closing time, the company was not liable for injuries to such person received while stepping off the platform in the dark. Heinlein v. Boston, 147 Mass. 136, 16 N. E. 698. The decision is based upon the principle that the railroad company had business hours within which it kept the station open and lighted for the benefit of the public, and that its rules and hours for doing business must be complied with. To the same effect, see Cincinnati v. Aller, 64 Ohio, 183, 60 N. E. 205, and Dowd v. Chicago, 84 Wis. 105, 54 N. W. 24. But that rule does not govern the case before us.

The case now under consideration is also distinguished from those cases where a railroad company has permitted the public to acquire by

user certain rights or privileges, as, for instance, a crossing over some part of its grounds or track. Under such circumstances it has been held that the company will be required to exercise the same degree of care as applicable to other streets or crossings. Davis v. Chicago, 58 Wis. 646, 17 N. W. 406; Harriman v. Pittsburgh, 45 Oh. St. 11, 12 N. E. 451.

It is claimed by respondent that the case is governed by Ingalls v. Adams Exp. Co., 44 Minn. 128, 46 N. W. 325, where it was held that a police officer of Austin, Minnesota, was entitled to recover for injuries received by the negligent running of an overloaded truck on the platform of the railway company; but in that case the accident occurred at or about the time of the arrival or departure of a train, and the officer was in the exercise of his duty at the time, and had a right to be there. It must be conceded that railroad companies have a right to determine what are reasonable business hours during which the public is permitted to transact business with them, and that they may limit the use of their premises to certain definite periods of time; but we are not prepared to say that, as a matter of law, such companies do not, under any circumstances, owe the duty of ordinary care to persons having occasion to visit a depot for the purpose of meeting some one expected to be there at a certain time, even though neither party has business relations with the company.

In this case the young man stated that he went to the station to meet a Mr. Bates on a matter of business; that he expected him to be there about train time for the purpose of boarding the train; but when respondent went to the premises it was about an hour and ten minutes before the time of departure of the train, of which fact he was aware. It may be inferred that he went so early in anticipation of meeting the man there, or in that vicinity, in time to find him and have a consultation before his departure.

We are unable to see why the duty of the railroad company to the public should be confined to those having strictly business relations with the company. There is no reasonable distinction between the rights of a person visiting the premises for the purpose of escorting another to a departing train, and the rights of one who goes there for the purpose of talking with a departing person on a business matter. There is a wide difference between the use of the premises with such

motives and those of idle curiosity and merely to kill time. While the company cannot be expected to be continuously on its guard as against loiterers and trespassers, yet it is reasonable that it should anticipate that the station house and depot grounds may be used as a place of meeting by people for various lawful purposes at or about the time of the arrival and departure of trains.

The dangers connected with the unloading of the gravel train were not apparent to a casual observer who might be in the vicinity—the unloading operations were not conducted upon the premises, although contiguous thereto. The method of fastening the cable by means of pulleys and ropes, and the manner of operating the plow by an engine, were dangerous proceedings. It must have been evident to those in charge of the work that if the stay ropes gave way the cable would instantly sweep across the intervening space between the cars and the depot, and this space was outside of the system of tracks. There has been much discussion in the books, and fine distinctions have been drawn, between active and passive negligence and acts of commission and omission. There is a marked difference between acts of negligence attributed to the condition of the premises, or arising from acts committed thereon, and conditions arising outside of the premises. On the one hand, a visitor to the depot grounds may reasonably be expected to assume the condition as he finds it, for it is open to his observation; on the other hand, there may be nothing to put him upon his guard, and it would seem unreasonable to require even a licensee to assume the risk of meeting with such unlooked for occurrences.

What the result might be if the respondent was a licensee, it is not now necessary to determine, for we are not prepared to hold, as a matter of law, that he was either a trespasser or a mere licensee. Nor do the facts, taken most favorably for respondent, require, as a matter of law, the conclusion that he was upon the premises by invitation, expressed or implied, and that appellant owed him the duty of ordinary care. It is not possible to lay down a general rule as to the limit of time under all conditions within which a person shall be restricted to visit such premises at his own peril. It is a question of fact, and must be determined according to the circumstances of each particular case. The line should not be too closely drawn, and under the facts and circumstances of this case we think it was a question for the

jury to determine whether the respondent was acting in good faith and in the reasonable expectation of meeting a person to be there for a lawful purpose. In determining that question, the time respondent went to the depot in advance of the train time is to be taken into consideration, but the fact that he was there an hour and ten minutes ahead of time is not necessarily decisive. If he was there with such intention, appellant owed him the duty of exercising ordinary care in conducting the unloading operations in the vicinity. Whether it did exercise such care by the use of proper stay ropes, or by keeping a reasonable lookout to guard persons against the danger, were questions for the jury.

The court instructed the jury that if respondent was upon the premises for the lawful purpose of seeing Mr. Bates, whom he supposed was going to take the train an hour or so after the time he went there, appellant owed him the duty of ordinary care; and to the same effect if he was there for a lawful and legitimate purpose, near the time when a train was about to arrive or depart, for the purpose of seeing a person whom he supposed was going away on the train, then the company owed the same duty. This was error, as it took from the jury consideration of the element of time. As above stated, the time he was there should be considered in connection with all the circumstances. For this reason a new trial must be granted.

There was no error in receiving testimony with reference to the circumstances under which respondent went to the depot, and his expectation of meeting Mr. Bates. It was also proper for the court to receive evidence as to how the accident occurred, including the manner in which the engine was started. The gist of the act of negligence was the insufficient fastening of the cable, but in determining that question it was competent to consider the manner in which the engine was started. It was also proper to receive evidence in regard to the character of the rope and its suitability for such use. We find no other error in the charge of the court.

Order reversed, and new trial granted.