PERE MARQUETTE RAILROAD COMPANY v. STRANGE.

[No. 21,234.    Filed May 26, 1908.    Rehearing denied November 18, 1908.]

1. CARRIERS.—*Passengers.—Persons Attempting to Board Trains.—Railroads.*—A person who entered defendant railroad company's waiting room, purchased a ticket and was going from the station to board a train, is a passenger. p. 164.

2. SAME. — *Passengers. — Injuries on Passage. — Presumptions. — Railroads.*—Proof that a passenger sustained injuries on account of a defective condition of a railroad company's roadbed, equipment or management raises a disputable presumption of the company's negligence. p. 165.

3. SAME.—*Passengers.—Injuries on Station Grounds.—Presumptions.—Railroads.*—Railroad companies must use reasonable care to prevent injuries to passengers while using the station grounds; and mere proof that a passenger received injuries while attempting to board a train raises no presumption of negligence against the company. *Louisville, etc., R. Co. v. Lucas*, 119 Ind. 583, overruled. p. 167.

4. SAME.—*Passengers.—Crossing at Station in Front of Moving Train.*—Where a railroad company's engineer ran his engine at the rate of five or six miles an hour into a station, at night, and the plaintiff, a passenger, attempted to cross the track in front, and the engineer, as soon as the plaintiff stepped upon the track applied his emergency brakes and reversed his engine, but was unable to stop in time to prevent injuring plaintiff, the company was not negligent as to the running of the train. p. 168.

5. SAME.—*Passengers.—Failure of Company to Guide Passenger to Train.—Railroads.*—Where a railroad company has provided proper stations and platforms for the use of passengers, it is not its duty to guide mature persons, in the full possession of their faculties, to its trains. p. 169.

6. SAME. — *Passengers. — Guiding to Trains. — Negligence. — Railroads.*—Where a station agent, on a dark night, took a lantern and walked along the platform, calling to the passengers to come that way to get on, and plaintiff, thinking the agent was across the track, undertook to cross, receiving injuries from an approaching train, no negligence of the company is shown. p. 169.

7. SAME.—*Railroads.—Lighting Stations.—Question for Jury.*—Whether a railroad company sufficiently lighted its station and platform for the purposes of its passengers is ordinarily a question for the jury. p. 170.

Pere Marquette R. Co. *v.* Strange—171 Ind. 160.

8. CARRIERS.—*Passengers.—Attempting to Board Train.—Contributory Negligence.*—A passenger who attempted to follow defendant railroad company's agent to the place where passengers boarded the train, the agent carrying a lantern, and in so doing the passenger, mistakenly thinking the agent was across the track, attempted to cross such track in front of the approaching train, when he was struck, is guilty of negligence precluding a recovery, although defendant did not perform its full duty in providing lights for its premises. p. 170.

9. APPEAL.—*Bill of Exceptions.—Time Given for Filing.—Nunc pro tunc Entries.*—The trial court has authority to enter a *nunc pro tunc* entry showing that 90 days' time was given in which to file a bill of exceptions, where his memoranda, among other things, showed "90 days for bill of ex. Pltff. obj." p. 173.

10. SAME.—*Transcript.—Precipe.—Nunc pro tunc Entries.—Time to Which They Relate.*—A precipe filed October 3 covers a *nunc pro tunc* entry made November 6 but relating back to July 25. p. 174.

11. SAME.—*Precipe.—Whether Part of Record.—Statutes.*—Under §667 Burns 1908, Acts 1903, p. 338, §7, the precipe becomes a part of the record and should be copied in the transcript immediately before the clerk's certificate. p. 174.

From Laporte Circuit Court; *John C. Richter,* Judge.

Action by Jeter G. Strange against the Pere Marquette Railroad Company. From a judgment for plaintiff, defendant appeals. Appealed from Appellate Court under clause 3, §1394 Burns 1908, Acts 1901, p. 565, §10. *Reversed.*

*John B. Elam, James W. Fesler* and *Harvey J. Elam,* for appellant.

*Frank E. Osborn, W. A. McVey* and *Theron F. Miller,* for appellee.

MONTGOMERY, J.—Appellee recovered a judgment for $10,-000 against appellant for personal injuries inflicted through an alleged breach of its duty as a common carrier of passengers. The complaint is in a single paragraph, and the negligence charged against appellant was (1) in failing to light its station grounds properly; (2) in carelessly running its train of cars; (3) in negligently failing to guide and direct appellee. Appellant answered by general denial.

Errors are properly assigned upon the overruling of appel-

lant's motion for judgment upon the answers of the jury to the interrogatories, and in overruling appellant's motion for a new trial.

The facts shown by the evidence are substantially as follows: Appellee was a carpenter, twenty-eight years of age, and came from Nashville, Tennessee, to Michigan City, Indiana, on May 13, 1904. He had traveled considerably, both in the daytime and in the night-time, but had ·never before been in Michigan City. He reached appellant's station by means of an electric car about 11 o'clock p. m., and had with him two trunks, one tool-chest, and two grips. The electric car stopped on the north side of appellant's tracks, and appellee's baggage was unloaded there. The night was windy, cloudy and dark. The railroad station consisted of a combination passenger- and baggage-car, placed south of the tracks, and between the station and the main track there was a switch track. A partition divided the car, and the station agent used the west end of the car as an office, and the east end was used as a waiting-room for passengers. The car was lighted on the inside by two lamps, and there was a signal-light on the outside, on the south side of the car, which cast its rays east and west. Appellee was informed by. the street-car conductor that the railroad and depot grounds were new, the station unfinished, and that this car was used as a waiting-room. A stranger pointed out the station car, and leaving his baggage on the north side of the tracks, appellee crossed over and entered at the east end of the car. He was accompanied by a companion, and their train was not due until 1:50 o'clock a. m. Appellee bought two tickets for St. Joseph, Michigan, the agent agreed to look after the checking of the baggage, and promised to awaken appellee when his train arrived. Appellee had been traveling since noon of May 12, rode the night before in a day coach from Louisville, Kentucky, to Monon, Indiana, slept some on the way, but was tired when he reached Michigan City. The agent having promised to

wake him when the train arrived, he lay down on a bench and went to sleep. When the train was approaching, the agent awoke him, he spoke to his companion about the grips, and went out of the station car at the east end. The agent, with a white lantern in his hand, went out at the west end of the station car and went upon the platform. A stranger went out of the waiting-room first, appellee's companion next, and appellee last. Appellee knew the night was dark, and that there might be danger, but had asked no one for instructions or directions. The platform was on the south side of the main track, and between the main track and side-track, was 110 feet long and 12 feet wide, made of planks fitted closely together and against the rails, and stood about flush with the top of the rails. The main track and the side-track were ballasted with gravel and sand level with the ties. When appellee got outside the station car he stopped to button his coat, and thus dropped somewhat behind the other two men. He then saw the headlight upon the approaching engine, and started in a northwesterly direction toward the track. He did not see the agent's lantern, but heard a voice say: "Come up this way." The wind was blowing, and he thought the sound of the voice came from the north side of the track. He continued in the direction in which he was traveling. The engine bell was ringing, but he did not hear it, or the noise of the train as it approached, or notice whether the engine had slowed up, stopped, or was moving. He saw the side-track when he passed over it, and when he reached the main track he did not stop, because he heard the agent say "come on," and it sounded as though he was on the opposite side of the track. He did not hear the train, and thought it had stopped, and, as he started to cross the track, he thought the engine was not more than seven feet distant, but perhaps it was ten or twelve feet away. He looked at the engine before he started to cross, but did not look while crossing. He was watching where he stepped, and could see the ground and rails, and when about

half way across the main track he was struck by the engine and injured. The engine was equipped with an Edward's electric headlight of 2,000 candle-power, placed in front of a powerful reflector. The light was burning brightly, and was such as to enable one upon the engine to see and distinguish objects from two thousand to three thousand feet away. The track west of the station was straight for nine hundred or one thousand feet, and the rays of the headlight struck the track about nine or ten feet in front of the pilot. When the engine was about a mile west of the station the steam was shut off, and it was running of its own momentum, and at the rate of five or six miles an hour, when appellee was struck. The engineer saw appellee step upon the track, and immediately applied the emergency brake and stopped the train within fifty or sixty feet. The station agent was at no time on the north side of the track, but when he said "come up this way" he was on the platform on the south side of the main track.

Appellant's motion for a new trial alleged that the verdict was not sustained by sufficient evidence, and was contrary to law, and that the court erred in denying appellant's request for a peremptory instruction.

Appellee's action is founded upon an alleged breach of duty owing to him, in the character of a passenger, from appellant as a common carrier. The relation of carrier and passenger commences when a person, with the good-faith intention of taking passage, with the consent of the carrier, express or implied, assumes a situation to avail himself of the facilities for transportation which the carrier offers. Appellee, having entered upon appellant's premises for the purpose of taking passage on a train in due course, and purchased a ticket entitling him to transportation between designated points, was, while approaching the train upon which he was to be carried and by which he was injured, clearly a passenger. 6 Cyc., 536; *Citizens St. R. Co.* v. *Jolly* (1903), 161 Ind. 80; *Freemont, etc., R.*

*Co.* v. *Hagblad* (1904), 72 Neb. 773, 101 N. W. 1033, 106 N. W. 1041, 4 L. R. A. (N. S.) 254; *Exton* v. *Central R. Co.* (1899), 63 N. J. L. 356, 46 Atl. 1099, 56 L. R. A. 508; *Warren* v. *Fitchburg R. Co.* (1861), 8 Allen 227, 85 Am. Dec. 700; *Wabash, etc., R. Co.* v. *Rector* (1882), 104 Ill. 296; *Webster* v. *Fitchburg R. Co.* (1894), 161 Mass. 298, 37 N. E. 165, 24 L. R. A. 521; *Illinois Cent. R. Co.* v. *Treat* (1898), 75 Ill. App. 327; *Young* v. *New York, etc., R. Co.* (1898), 171 Mass. 33, 50 N. E. 455, 41 L. R. A. 193; *Barth* v. *Kansas City Elevated R. Co.* (1898), 142 Mo. 535, 44 S. W. 778; *Warner* v. *Baltimore, etc., R. Co.* (1897), 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed. 491; *Atchison, etc., R. Co.* v. *Holloway* (1905), 71 Kan. 1, 80 Pac. 31, 114 Am. St. 462; *St. Louis, etc., R. Co.* v. *Wainwright* (1907), 152 Fed. 624, 82 C. C. A. 16; *Lake St. Elevated R. Co.* v. *Burgess* (1903), 200 Ill. 628, 66 N. E. 215; *Chicago, etc., R. Co.* v. *Walker* (1905), 217 Ill. 605, 75 N. E. 520; *Haselton* v. *Portsmouth, etc., R. Co.* (1902), 71 N. H. 589, 53 Atl. 1016; *McBride* v. *Georgia R., etc., Co.* (1906), 125 Ga. 515, 54 S. E. 674; *Shannon* v. *Boston, etc., R. Co.* (1885), 78 Me. 52, 2 Atl. 678; *Gordon* v. *Grand St., etc., R. Co.* (1863), 40 Barb. 546; *Louisville, etc., R. Co.* v. *Reynolds* (1903), (Ky.), 71 S. W. 516; *Birmingham, etc., R. Co.* v. *Wise* (1906), 149 Ala. 492, 42 South. 821.

Appellant does not deny that the relation of passenger had been established before, and existed at, the time of the accident in which appellee was injured, but a sharp conflict is waged as to the measure of appellant's duty to him as such passenger while approaching one of its trains. The common law, for the purpose of determining questions of liability for injury, divided passengers into two classes—(1) those being transported, and (2) those not being transported. The highest practical care and diligence were exacted of the carrier for the safety of passengers of the first class, and, in case of injury resulting from defective

roadbed, equipment or management, a presumption of the carrier's negligence was indulged by law in favor of the injured person. The carrier was bound only for the exercise of ordinary care with respect to passengers of the second class, and in case of accidental injury no presumption as to negligence existed in favor of either party. The common-law rule has not been rescinded or modified by statute in this State. The propriety and justice of the requirement that a high degree of care be exercised for the security of passengers of the first class, and the sound public policy upon which the presumption of negligence in case of accidental injury to one of that class from defective roadway or equipment is founded, are manifest. A passenger being transported at a high rate of speed by powerful engines is helplessly in charge of the carrier, required to obey its regulations, and to rely for his safety wholly upon the foresight, care and prudence of its agents. All of its ways, instrumentalities and methods of operation are exclusively within its control, and the slightest omission or neglect with respect to any of these things is likely to be followed by frightful consequences. This court, appreciating the grounds upon which the rule was founded, has consistently held that when an injury is sustained by a passenger in transportation upon a railroad, on account of the defective condition of the roadbed, equipment or management, the happening of the accident constitutes *prima facie* evidence of negligence on the part of the operating company, and devolves upon it the duty of establishing such facts as will exempt it from the imputation of negligence. *Cleveland, etc., R. Co.* v. *Hadley* (1908), 170 Ind. 204; *Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 4 L. R. A. (N. S.) 1081; *Terre Haute, etc., R. Co.* v. *Sheeks* (1900), 155 Ind. 74; *Cleveland, etc., R. Co.* v. *Newell* (1885), 104 Ind. 264, 54 Am. Rep. 312.

The special circumstances and risks attending the actual transportation of passengers do not exist with respect to

passengers before entering or after leaving the
3. coaches of such carriers. The perils surrounding a
passengers while about the waiting-room, platform and
station grounds of a railroad company are not different in
kind from those to be encountered by persons while upon
the premises of numerous manufacturing and mercantile es-
tablishments, to which they have come by invitation or in-
ducement for the transaction of business. That high degree
of diligence and care exacted, out of considerations of public
policy, for the benefit of passengers in the actual progress
of their journey is accordingly relaxed in the case of pas-
sengers who are about the stations, platforms and approaches
of a railway company. The obligation resting upon the
company in supplying and maintaining these accommoda-
tions, and with respect to passengers using the same, is to ex-
ercise only ordinary care, or care in proportion to the dan-
ger likely to be encountered. It is our holding, therefore,
that appellant performed the full measure of its duty to
appellee as a passenger in the circumstances shown, if, hav-
ing regard to the nature of its business, it exercised ordinary
and reasonable care for his safety and protection. *Penn-
sylvania Co.* v. *Marion* (1885), 104 Ind. 239; *Cincinnati,
etc., R. Co.* v. *Peters* (1881), 80 Ind. 168; *Pittsburgh, etc.,
R. Co.* v. *Harris* (1906), 38 Ind. App. 77; *Maxfield* v. *Maine
Cent. R. Co.* (1905), 100 Me. 79, 60 Atl. 710; *Pendleton St.
R. Co.* v. *Shires* (1868), 18 Ohio St. 255; *McCormick* v.
*Detroit, etc., R. Co.* (1905), 141 Mich. 17, 104 N. W. 390;
*Crow* v. *Michigan Cent. R. Co.* (1906), 142 Mich. 692, 106
N. W. 395; *St. Louis, etc., R. Co.* v. *Barnett* (1898), 65 Ark.
255, 45 S. W. 550; *Moreland* v. *Boston, etc., R. Co.* (1886),
141 Mass. 31, 6 N. E. 225; *Freemont, etc., R. Co.* v. *Hag-
blad* (1904), 72 Neb. 773, 101 N. W. 1033, 106 N. W. 1041,
4 L. R. A. (N. S.) 254; *Kelly* v. *Manhattan R. Co.* (1889),
112 N. Y. 443, 20 N. E. 383, 3 L. R. A. 74; *Lafflin* v. *Buffalo,
etc., R. Co.* (1887), 106 N. Y. 136, 12 N. E. 599, 60 Am. Rep.
433; *Falls* v. *San Francisco, etc., R. Co.* (1893), 97 Cal. 114,

31 Pac. 901; *Conroy* v. *Chicago, etc., R. Co.* (1897), 96 Wis. 243, 70 N. W. 486, 38 L. R. A. 419; *Exton* v. *Central R. Co., supra; Fullerton* v. *Fordyce* (1894), 121 Mo. 1, 25 S. W. 587, 42 Am. St. 516; *Batton* v. *South, etc., R. Co.* (1884), 77 Ala. 591, 54 Am. Rep. 80; *Southern R. Co.* v. *Reeves* (1902), 116 Ga. 743, 42 S. E. 1015; *Robertson* v. *Wabash R. Co.* (1899), 152 Mo. 382, 53 S. W. 1082; *Cincinnati, etc., R. Co.* v. *Giboney* (1907), 30 Ky. Law 1005, 100 S. W. 216; *Christie* v. *Chicago, etc., R. Co.* (1895), 61 Minn. 161, 63 N. W. 482; *Hayman* v. *Pennsylvania R. Co.* (1888), 118 Pa. St. 508, 11 Atl. 815; *Taylor* v. *Pennsylvania Co.* (1892), 50 Fed. 755; 4 Elliott, Railroads (2d ed.), §1590; 6 Cyc., 608.

The case of *Louisville, etc., R. Co.* v. *Lucas* (1889), 119 Ind. 583, 6 L. R. A. 193, involved an accident to a passenger on account of a defect in the station platform, and this court, speaking of the duty of the company, said at page 590: "It is bound to use the highest degree of practical care to provide against accidents to passengers that may be foreseen and prevented." This statement of the law is erroneous and disapproved, so far as it purports to define the duty of a railway company to provide and maintain instrumentalities and accommodations not directly employed in the transportation of passengers, such as platforms, waiting-rooms and appurtenances.

The complaint charged appellant with negligence in the management of its train. It was conclusively shown that the train approached the station with the headlight 4. burning, the bell ringing, the steam shut off, running at a slow rate of speed, and under control; that appellee was at once discovered on his attempting to cross in front of the engine, the emergency brake applied, and the train stopped in the shortest possible distance. This charge of negligence was wholly disproved, and must be disregarded in the the further consideration of the case.

It was further alleged that appellant negligently failed to guide appellee properly to his train. No facts were alleged

or shown in evidence making it the duty of appel-
lant to guide or assist appellee in reaching his train.

He was a man of mature years, in good health, and in the full enjoyment of all his faculties, and had had considerable experience in traveling. The platform was situate between the waiting-room and the track upon which his train would pass, was a suitable structure for the purpose intended, and was in good condition, so that no danger would be encountered in passing from the waiting-room to the place provided for entering upon trains. Appellee did not disclose the fact that he was a stranger and ignorant of his surroundings, or ask for any information or guidance. In such circumstances appellant was under no obligation to exercise special supervision and guidance over appellee while traveling from the station to his train.

Appellee's counsel invoke the principle that although no assistance be exacted under the law, if any be tendered it must not be negligently rendered. Appellant's agent, with a white light in his hand, went out upon the platform and took a position at the proper point for receiving passengers alighting from the train, and as appellee approached, said agent called out: "Come up this way," or "Come on boys, we will get on up here," or "Come up this way boys; here is where you will get on your train." This guidance cannot be regarded as being in anywise negligent, nor can it be made so by the circumstance that appellee erroneously thought the call to him came from the north side of the track, and was thereby induced to make an attempt to cross in front of the engine. The most serious charge of negligence preferred against appellant is in failing adequately to light its station grounds. The duty imposed upon railway companies to exercise ordinary care for the safety of their passengers, includes an obligation to keep their stations, platforms, walks and other approaches reasonably lighted at night, for a sufficient time before the arrival and after the departure of trains, to

enable passengers to avoid danger. *Louisville, etc., R. Co.* v. *Treadway* (1895), 142 Ind. 475; *Louisville, etc., R. Co.* v. *Lucas, supra; Abbot* v. *Oregon R. Co.* (1905), 46 Ore. 549, 80 Pac. 1012, 114 Am. St. 885, 1 L. R. A. (N. S.) 851; *Gerhart* v. *Wabash R. Co.* (1904), 110 Mo. App. 105, 84 S. W. 100; *Alabama, etc., R. Co.* v. *Arnold* (1887), 84 Ala. 159, 4 South. 359, 5 Am. St. 354; *Ellis* v. *Chicago, etc., R. Co.* (1904), 120 Wis. 645, 98 N. W. 942; *Heinlein* v. *Boston, etc., R. Co.* (1888), 147 Mass. 136, 16 N. E. 698, 9 Am. St. 676; *Missouri Pac. R. Co.* v. *Neiswanger* (1889), 41 Kan. 621, 21 Pac. 582, 13 Am. St. 304; *Illinois Cent. R. Co.* v. *Cruse* (1906), 29 Ky. Law 914, 96 S. W. 821, 8 L. R. A. (N. S.) 229; *Atchison, etc., R. Co.* v. *Calhoun* (1907), 18 Okla. 75, 89 Pac. 207; 4 Elliott, Railroads (2d ed.), §1590a; 3 Thompson, Negligence (2d ed.), §2691; Hutchinson, Carriers (2d ed.), §516; 6 Cyc., 609.

The extent of lighting required under the law at any particular station must depend upon the amount and nature of the business to be transacted, and the character, situation and surroundings of the station with reference to tracks and other physical conditions reasonably calculated to affect the security of persons in the proper use of the premises and in the exercise of ordinary care. The adequacy of the lighting is ordinarily a question for the jury under proper instructions; and if appellee's injury were the result of a fall, from the unguarded edge of an elevated platform, or over an obstruction in his path, or on account of a hole into which he stepped, because of the darkness, the general verdict of the jury, finding in effect that appellant's premises were insufficiently lighted and that appellee had used ordinary care for his own safety, would doubtless be conclusive. But the manner and circumstances of this accident are so unusual that, accepting as true the statement of facts most favorable to appellee, but one conclusion can reasonably be drawn there-

from by impartial minds, and that is, that he was not in the exercise of ordinary care for his own safety when injured.

Conceding that appellant did not perform the full measure of its duty to the traveling public in the matter of supplying lights for its premises, and, taking conditions as they were, we are clearly of opinion that appellee's injury must be attributed, in part at least, to his lack of attention and indifference to his surroundings. He was a stranger and unacquainted with the station grounds, but he did not disclose that fact or seek information. The station platform was low, 12 feet wide and 110 feet long, situated between the waiting-room and the main track, in such a position as to require appellee to pass over it in going to his train, and to expose him to no danger. The agent walked ahead with a white lantern, and called out, "come up this way," in a tone of voice which all heard. Appellee, falling behind the other passengers, says that he did not see the lantern and misunderstood the direction from whence the voice came, but this mistake was his, and he must bear the consequences. He was told that his train was coming, and, going outside, he saw the headlight when the train was probably two hundred or three hundred feet away. He traveled twenty-five or thirty feet in a northwesterly direction, half facing the approaching train, and looked at the light again when it was ten or twelve feet distant. He erroneously thought the train had stopped, and attempted to cross the main track directly in front of the engine. His ignorance of the premises, the absence of general lighting, and the attendant darkness imposed upon him the duty of exercising greater vigilance for his safety. The absence of platform lights was not the sole cause of the accident, since the instrument with which he collided was distinctly visible at all times. He knew where the engine was, and its powerful headlight so lighted up his path as to enable him to know when he stepped upon the main track, and to see and dis-

tinguish the rails and ties, and to enable the engineer to see him. Appellee was a man of mature years and in full possession of his faculties, and it could hardly be anticipated that such a person, either in the daytime or at night, would pass over the platform and walk immediately in front of the train which he desired to board. An affirmance of a recovery upon these facts would relieve and excuse passengers of any concern and care for their own safety, and would exact of the carrier not only the highest possible care, but an absolute insurance of the security of persons rightfully upon its premises. Our conclusion is that appellee is shown by the evidence to have been guilty of contributory negligence, which precludes a recovery. *Wabash R. Co.* v. *Keister* (1904), 163 Ind. 609; *Smith* v. *Wabash R. Co.* (1895) 141 Ind. 92; *Cincinnati, etc., R. Co.* v. *Howard* (1890), 124 Ind. 280, 8 L. R. A. 593, 19 Am. St. 96; *Chicago, etc., R. Co.* v. *Hedges* (1889), 118 Ind. 5; *Ohio, etc., R. Co.* v. *Hill* (1889), 117 Ind. 56; *Indiana, etc., R. Co.* v. *Greene* (1886), 106 Ind. 279, 55 Am. Rep. 736; *Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398; *Cincinnati, etc., R. Co.* v. *Butler* (1885), 103 Ind. 31; *Bellefontaine R. Co.* v. *Hunter* (1870), 33 Ind. 335, 5 Am. Rep. 201; *Bancroft* v. *Boston, etc., R. Co.* (1867), 97 Mass. 275; *Young* v. *Old Colony R. Co.* (1892), 156 Mass. 178, 30 N. E. 560; *Judge* v. *Elkins* (1903), 183 Mass. 229, 66 N. E. 708; *Adams* v. *Gulf, etc., R. Co.* (1907), (Tex. Civ. App.), 105 S. W. 526; *Weeks* v. *New Orleans, etc., R. Co.* (1888), 40 La. Ann. 800, 5 South. 72, 8 Am. St. 560.

We have considered appellant's motion for judgment upon the answers of the jury to special interrogatories, notwithstanding the general verdict, but are of opinion that such answers are not sufficiently full and conclusive to overthrow the general verdict, and therefore have determined the appeal upon the evidence.

The judgment is reversed, with directions to sustain appellant's motion for a new trial.

## ON PETITION FOR REHEARING.

MONTGOMERY, J.—In the original opinion appellant's bill of exceptions containing the evidence, and motion for a new trial, were treated as properly in the record, without any discussion of the questions relating thereto made by appellee's counsel. On petition for a rehearing it is alleged that the court erred in holding such bill of exceptions and motion for a new trial to be in the record, and in holding that, upon the evidence as a matter of law, appellee was guilty of contributory negligence.

Appellee assigned as cross-error that the circuit court erred in its order of November 6, 1905, amending and correcting, *nunc pro tunc,* its order of July 25, 1905, so as to show that appellant was given ninety days in which to prepare and present its general bill of exceptions. The memoranda of the trial judge, upon which the amendment *nunc pro tunc* was made, were as follows:

"Mo. filed for N. T. Mo. for N. T. ov and ex. Pray ap to Sup. Ct. and granted. Bond sum $15,000.00 by Sept. 11, '05, Aetna Indemnity Co. as surety. 90 days for bill of ex. Pltff. obj. to surety, ov. and ex."

These notes were clearly sufficient to justify the court in making the requested correction, showing, in accordance with the fact, that appellant was given ninety days in which to prepare a bill of exceptions upon the overruling of its motion for a new trial.

On October 3, 1905, appellant filed a precipe with the clerk of the circuit court, calling for a complete transcript of the record in the cause, except that the original bill of exceptions containing the evidence be certified instead of a copy thereof. On November 8, 1905, a further precipe was filed requesting a transcript of the proceedings relating to the *nunc pro tunc* entry. The argument of appellee's counsel is, that time beyond the term for filing the bill of exceptions being given only by the *nunc pro tunc* order of court,

and that action not being sustained by sufficient evidence, therefore the bill of exceptions is not properly a part of the record. We have already seen that the *nunc pro tunc* entry was fully justified by the notes of the judge introduced in evidence, and this ruling disposes of the objection under immediate consideration.

It is insisted that the motion for a new trial was not a part of the record on October 3, 1905, and could not be transcribed in obedience to the precipe of that date; 10. that it was not called for by the subsequent precipe, and is accordingly no part of the record. The motion for a new trial was a part of the record without a bill of exceptions, and should have been transcribed as requested by the precipe of October 3. But if it were conceded that it was only brought into the record by the *nunc pro tunc* entry, it would still relate back to July 25, 1905, and become a part of the record as of that date, and be covered by the precipe for a complete transcript.

It is further contended that the record is not sufficient to present any question, because the original precipes have not been appended to the transcript, but only copied 11. therein. Section 690 Burns 1908, §649 R. S. 1881, requires the precipe to be appended to the transcript. Section 667 Burns 1908, Acts 1903, p. 338, §7, declares that the written precipe shall constitute a part of the record and be copied in the transcript immediately before the certificate of the clerk. This transcript was prepared in compliance with the latter act, and is clearly sufficient, and we are not required to decide whether the former statute upon this point is in force or repealed.

We have again considered the merits of the case upon the evidence, and adhere to the holding that it appears as a matter of law that appellee failed to exercise that ordinary care for his safety which the law exacts of a mature person in the circumstances shown.

The petition for a rehearing is accordingly overruled.