(68 App. Div. 542.)

### CONNELLY v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 21, 1902.)

1. RAILROADS—ACTION FOR INJURIES BY FIRE—CARE AS TO LICENSEE.

Plaintiff was the owner of railroad ties which had been piled up on defendant's right of way, near its track, while another company operated the road. When the road passed into the hands of defendant, the ties were allowed to remain, solely for the accommodation of plaintiff, where they had been piled, for two years, but none of them were ever sold to defendant. They were not there for shipment, and defendant had no interest in their being on its right of way. *Held*, that plaintiff was a mere licensee, as to whom defendant owed no duty to remove dry grass and combustible rubbish which had been allowed to accumulate around the ties, so as to protect them from danger of fire from passing engines.

2. SAME—RAILROAD TIES NEAR TRACK—ASSUMPTION OF RISK.

Plaintiff knew, and had known for a long time, that dry grass and other rubbish had been allowed to remain upon the ground near the ties, and to become dry and combustible, and that defendant was running trains over its road, and knew the danger of fire resulting therefrom. *Held* that, by using the right of way as it was, plaintiff assumed the risk of having the ties burned by fire kindled from passing engines.

3. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff was guilty of contributory negligence in not removing the dry grass and rubbish from around the ties, or removing the ties themselves.

McLennan, J., dissenting.

Appeal from trial term, Cattaraugus county.

Action by John Connelly against the Erie Railroad Company. From a judgment in favor of plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

James G. Johnson, for appellant.
Thomas H. Dowd, for respondent.

WILLIAMS, J. The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. The action was brought to recover damages for the destruction by fire of a quantity of railroad ties alleged to have been caused by the negligence of the defendant. The ties were piled upon the defendant's right of way, near its tracks. There was a lot of rubbish about the ties and along the tracks. It was a dry time. Sparks or coals from a passing engine fell in the rubbish, kindled a fire, and the ties were consumed. The defendant claims it was not liable to the respondent in damages, for two reasons: (1) The plaintiff was a mere licensee as to the ties upon defendant's right of way, and the defendant was not, therefore, liable for setting the fire resulting in their destruction. (2) The plaintiff was not free from contributory negligence. He assumed the risk.

The evidence shows that the plaintiff had been accustomed to pile ties at the place in question for many years while the New York, Lake Erie & Western Railroad Company was operating the railroad. Some were sold to that company, and some were sold and shipped to other companies. That company went into the hands of receivers July 25, 1893; and some time thereafter the railroad passed into the custody of the defendant, by whom it was being operated at the time the fire occurred, October 6, 1897. No ties were sold to the receivers or to the defendant after the railroad came under their control, respectively. The ties in question had been where they were for at least two years. They were not there at the time of the fire for shipment over defendant's road. The defendant had no interest in their being upon its right of way, but permitted them to be there solely for the accommodation of the plaintiff. As to the ties, at the time of the fire, the plaintiff was merely a licensee. The defendant, as to him, had, therefore, no duty imposed upon it of active vigilance to protect the ties from destruction by fire kindled by its passing locomotives. It would only be liable in case the fire was kindled willfully or wantonly. Larmore v. Iron Co., 101 N. Y. 391, 4 N. E. 752, 54 Am. Rep. 718; Splittorf v. State, 108 N. Y. 205, 15 N. E. 322; Walsh v. Railroad Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615; Cusick v. Adams, 115 N. Y. 55, 21 N. E. 673, 12 Am. St. Rep. 772. The fire was neither willful nor wanton. It was, at most, merely negligent. The specific ground of negligence alleged was not that rubbish had been allowed to accumulate and remain upon defendant's right of way about the ties for 30 or 40 years, and long grass to grow up there each year and be cut down. All these things the plaintiff had knowledge of, and, being a mere licensee, he could not complain that these conditions existed. If he did not desire to take the risk of fire from the presence of these things, he should have removed the grass and rubbish himself, or have taken away his ties. He could not, as a mere licensee, require the defendant to improve the condition of the premises he was permitted to use without compensation. The specific ground of negligence was that the defendant permitted the long grass cut the year of and before the fire to remain upon the ground and become dry, so that the sparks or coals from the engine kindled the fire in this as well as the other old dry

rubbish that had laid upon the ground about the ties during all the time the ties had laid there. We do not think any duty was imposed upon the defendant, so far as the plaintiff was concerned, to remove the grass, any more than the other old dry rubbish, so as to protect the plaintiff's property from danger of fire, or that the failure to so remove the grass constituted negligence rendering the defendant liable for damages for the destruction of the ties. Plaintiff assumed the risk of using the right of way as it was, or was guilty of contributory negligence in not removing the dry rubbish and grass, or his ties, and could not, having failed to perform his duty in this respect, call upon the defendant to pay him for his ties.

The court submitted this question to the jury as one of assumed risk, and, in the course of the charge, said:

"The plaintiff owed himself a duty with respect to his property, and if he delivered and piled it up on the lands of the railroad company, with a knowledge of the situation, or if knowledge had come to him of the situation and perilous condition of the property, then he had no legal right to allow it to remain subject to the danger of destruction. * * * The evidence upon the part of the plaintiff is that he knew that this land where his ties were piled was low and swampy, that grass had grown there from year to year, and that sometimes it was cut. He knew that bark was peeled from ties or from posts, and that chips had been made by the railroad company in the building or construction of fences; and he testified, upon cross-examination, how long he had known of that situation. He said, thirty or forty years—as long as the road had been in operation—he had observed it; and he testified that he passed there at least once a week right up to the time of the happening of the fire out of which this action arises. * * * The plaintiff knew that defendant was running trains over its road as well as the defendant knew it. He knew of the danger that might result from running and operating trains there as well as the defendant."

And although these things were true, the court still left it as a question of fact for the jury whether the plaintiff assumed the risk of destruction of his property by putting it upon defendant's right of way, and leaving it there, and making no effort himself to clear away the rubbish in which the fire caught, or to remove his ties, and whether the defendant was guilty of negligence in leaving the rubbish there, which rendered it liable to the plaintiff for the damages sustained by him. The jury found on both questions in favor of the plaintiff, although the plaintiff was fully aware of the situation, and the danger connected with allowing his property to remain in that situation, though he was but a mere licensee, and paid the defendant nothing for delivering or storing his property on its right of way, and it had no interest whatever in his keeping it there.

We cannot assent to the proposition that any right of action was established by the evidence in the case. The defendant raised the question fairly in its motion for a nonsuit and its motion for a new trial upon the minutes. The judgment and order must therefore be reversed, and new trial granted, with costs to the appellant to abide the event. All concur, except McLENNAN, J., who dissents, in an opinion.

McLENNAN, J. (dissenting). The defendant is engaged in operating a line of railroad which extends from Jersey City westward to

and through the village of Salamanca, N. Y. About four miles west of the village there is a siding called "Page's Switch," which is used in connection with the railroad. The plaintiff was the owner of a sawmill located about four miles from the siding, and for years had been in the habit of shipping the products of the mill from said siding, and delivering ties there for sale to the railroad company. The New York, Lake Erie & Western Railroad Company at one time operated the railroad in question. It finally passed into the hands of a receiver, and afterwards (but at what particular time does not appear) the defendant became the owner thereof, and was and is engaged in operating the same. Pursuant to an agreement with the said New York, Lake Erie & Western Railroad Company, the plaintiff delivered at the siding a large number of railroad ties. Under such arrangement the company had the right to select such ties as it wanted, and was to pay a price agreed upon therefor. Other ties were delivered for shipment. After the defendant had selected such ties as it desired, between four and five hundred remained, piled in the usual way alongside the siding. So far as appears, none of the ties delivered at the switch by the plaintiff were purchased by the receiver or by the defendant after they commenced operating the road, and the defendant did no act in respect to them. On the 5th day of September, 1897, while the ties were piled as aforesaid, they were destroyed by fire. The evidence was such as to justify the jury in finding that the defendant's employés cut the grass and weeds upon its right of way, which was adjacent to and about the ties, in a period of drought, and left the same until they became so dry that they caught fire from a spark of a passing engine, and thus conveyed the fire to the ties, causing their total destruction. Considering the season, the excessive drought, the combustible nature of the material about the ties, and all the other circumstances, the jury was justified in finding that the defendant was negligent in permitting the dry grass and weeds which it had cut, and other combustible material, to remain in close proximity to plaintiff's property, when it was liable at any time to be ignited from sparks from passing engines, and that such negligence caused the destruction of the plaintiff's ties. Webb v. Railway Co., 49 N. Y. 420, 10 Am. Rep. 389; O'Neill v. Railroad Co., 115 N. Y. 579, 22 N. E. 217, 5 L. R. A. 591; Hoffman v. King, 160 N. Y. 618, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715.

In the case last cited the rule is stated in the headnote as follows:

"As even properly constructed locomotives, with the most approved spark arresters, will, of necessity, emit some sparks, it is the duty of a railroad company, in periods of drought, to keep its right of way free from combustible material which is liable to be ignited from sparks so emitted; and failure so to do constitutes negligence."

There is no claim that the negligent acts complained of were wantonly or willfully done, which it is urged by appellant's counsel was necessary in order to make the defendant liable therefor. That is entirely immaterial, as concededly the acts were done by employés of the defendant while engaged in the performance of duties directly within the scope of their employment. Neither is it of importance

that the negligence was not gross, so called, but of some lesser degree. The question is, did the acts, under the circumstances, constitute negligence? If it had been proven that defendant's employés had emptied the fire box of an engine in close proximity to plaintiff's ties, and thus caused their destruction, concededly gross negligence would have been established. Precisely the same result happened because of the acts complained of, although less pronounced in their character, perhaps more difficult of proof, and from which, perchance, different inferences might be drawn by a jury; but, if the acts constitute negligence, liability follows, unless the person chargeable therewith is relieved because of some other principle of law. As affecting the liability for a negligent act, we know of no distinction between gross, petty, or some other degree of negligence. The only question to be determined in such case is, did the person who is sought to be charged do or omit to do something which a person of ordinary care and prudence would or would not have done under the circumstances? As we have seen, such acts as are here complained of have been repeatedly held by the court of appeals to constitute negligence on the part of railroad companies, and therefore a further discussion of the question cannot be useful.

For the first time in this case, the question is raised upon this appeal that the plaintiff failed to prove the ties in question were destroyed after the defendant became the owner of the railroad, and while it was operating the same; and it is urged, for that reason, the judgment and order appealed from should be reversed, and a new trial granted. We think such defense is not now available to the defendant, because of the admissions in the pleadings, and the course which was pursued by the defendant upon the trial; because the question was in no manner raised either upon the trial, or upon the motion for a new trial made upon the minutes of the court; and because it does not in any manner appear that the defendant was not, as matter of fact, operating the railroad at the time in question. In the complaint it is alleged, in substance, that at all the times mentioned—the date of the fire was one—the defendant was the owner of and was operating the railroad in question under the name and style of Erie Railroad Company. The answer denies the allegations of the complaint, "except that it is a domestic railroad corporation, incorporated in the state of New York in the name of Erie Railroad Company; that it is operating a line of steam railroad extending from Jersey City westerly, and a portion of which passes through the town of Salamanca, county of Cattaraugus, and there is a switch in its said line of railroad in said town of Salamanca known as 'Page's Switch.' Second. For a second answer, defendant, on information and belief, alleges that the brush, logs, shavings, and other inflammable matter and substances on its right of way, at or near Page's Switch, named in the complaint, at the times therein mentioned, were placed thereon by the plaintiff herein, and were thereon, and in the same condition as when the ties named in the complaint were burned, at the time plaintiff deposited the railroad ties thereon," and that he so deposited them with full knowledge of

the condition, and was therefore guilty of contributory negligence.
The answer, when fairly construed in connection with the allegations
of the complaint, in effect admits that the defendant was the owner
of and was operating the railroad at the time the alleged negligent
acts were committed. Upon the trial it was proven, apparently in-
cidentally, that the receiver was operating the railroad in January,
1894; but it was not shown when the defendant was incorporated,
or when it commenced the operation of the road. It seems to have
been assumed throughout the entire trial, by all parties, that the ties
were burned while the defendant was operating the railroad. This
is apparent from the language used by the learned trial court in
charging the jury, to which the defendant in no manner objected.
He said:

"Several witnesses have testified that grass grew there in considerable
abundance, of a coarse, swampy character, and was mowed some time during
the season of 1897 and allowed to remain where it fell; that bark, chips,
and leaves had accumulated; that it was a dry season of the year, and that,
had the defendant been in the exercise of the care and prudence that it
owed to the plaintiff with respect to his property, they would have cleaned
this place up; that they would have removed these accumulations to which
I have called your attention, so as to remove the danger from fire incident
to a passing engine. Upon the part of the defendant it is contended in this
respect that you are not justified in drawing this inference of fact from the
circumstances developed in the evidence; that the defendant, acting in the
capacity of a prudent and careful person, would not have been impressed
that it was dangerous; that fire was liable to be communicated to the refuse
which had been permitted to accumulate at this point near the place where
these ties were stored; and that therefore it was not guilty of negligence in
not removing this refuse."

That the defendant had no thought upon the trial of raising the
question that the ties were not burned while it owned and operated
the railroad is apparent by what its learned counsel said in moving
for a nonsuit at the close of plaintiff's evidence. The record is as
follows:

"The defendant moved for a nonsuit upon the ground that the plaintiff had
not shown any state of affairs which warrants a recovery for any injury,
unless it was willful; in other words, that the railroad company was under
no obligation to take care of the plaintiff's property, except that it could not
injure it wantonly or willfully, and there has been no evidence showing that
the act of the railroad company or of its employés was wanton or willful."

Again, upon renewing the motion for a nonsuit at the close of the
entire evidence, counsel for the defendant said:

"And the further ground that the place the plaintiff placed the ties was
such that the defendant was charged with no care or responsibility for the
same, and that it could only be charged with willful injury of them, and
that there is no evidence of anything of that kind."

During the trial it was nowhere suggested that the defendant was
not operating the railroad at the time the plaintiff's ties were burned,
but, as we have seen, it was assumed throughout—was understood
by the learned trial justice, and by counsel as well—that the de-
fendant was liable for the damages sustained, if liability existed.
The case was tried and submitted upon that theory without objec-
tion on the part of the defendant. There is no proof or anything

to indicate that the defendant was not the owner of and engaged in operating the railroad in question when the plaintiff's ties were burned. It was not claimed upon the argument, and is not suggested in appellant's brief, that such was not in fact the case. It is only urged that formal proof of the fact was not made. Under all the circumstances, it is too late to effectively raise such question for the first time on appeal. Jordan v. McGill, 43 App. Div. 264, 60 N. Y. Supp. 33; Flandrow v. Hammond, 148 N. Y. 129, 42 N. E. 511; Sterrett v. Bank, 122 N. Y. 659, 25 N. E. 913.

Assuming that the plaintiff was himself free from contributory negligence, is the defendant liable for the value of the ties destroyed through its negligence? The plaintiff was not a trespasser in permitting the ties to remain on defendant's right of way. Originally they were placed there rightfully, under an agreement with defendant's predecessor, for the mutual benefit of both parties. If the ties had been destroyed by the negligent act of that company, unquestionably it would have been liable to the plaintiff for their value. Undoubtedly, as between him and the defendant, the plaintiff was a licensee at will. He could have been compelled at any time to remove the ties, and after notice to remove them, if the plaintiff failed to do so within a reasonable time, the defendant would have been relieved of all liability in respect to the property,—even for its negligent acts. No such notice was given. No objection was in any manner made to plaintiff's continuing to store his ties upon defendant's premises after it became the owner of the railroad, precisely as he had done before. The defendant was engaged in the same business as its predecessor. Plaintiff's custom was transferred from the old company to it. He continued to use the siding for shipping purposes as occasion required. The defendant knew, or is presumed to have known, the situation at the siding, and by what right the plaintiff permitted his property to remain upon its right of way. Under these circumstances, the plaintiff had the right to assume that the ties were allowed to remain by the defendant by virtue of the agreement with the old company, and that the defendant had in fact assented to or adopted it; had a right to assume that the ties were allowed to remain because of the agreement under which they were originally placed upon the railroad premises. Under such circumstances, it cannot be possible that the defendant had a right to negligently destroy the plaintiff's property without incurring any liability therefor. If a person should build a dwelling house or other structure upon the right of way of a railroad company, with its permission, and for the mutual benefit of both parties, and under such circumstances that the company would be liable for any damages done thereto through its negligence, could its successor, without at least giving notice to the owner to remove such structure, negligently destroy the same with impunity? We think the proposition is absurd, and is not supported either by reason or authority. The defendant became the licensor, and occupied precisely the same position in respect to the ties as its predecessor did. The jury was justified in finding, as it apparently did find, under the charge of the learned trial justice, that the ties were delivered at

the siding by the plaintiff for shipment or sale under an agreement with the predecessor company; and, if so, the defendant, by its silence or acquiescence, became charged with the same duty in respect to the plaintiff's property as rested upon the old company.

It is urged that the evidence conclusively establishes contributory negligence on the part of the plaintiff, and that therefore he was not entitled to recover. The evidence does show that the place where the plaintiff piled his ties some two or three years before they were burned was low and marshy ground, was grown up with swale grass and weeds, and was covered with other combustible refuse to a considerable extent, and it appears without contradiction that at the time the ties were placed upon the right of way of the predecessor company the plaintiff was quite as conversant with the situation as it was. He knew the character of the soil, about the rubbish that had accumulated, and all the conditions as they then existed, and, if the fire had resulted solely by reason of such conditions, the plaintiff could not have recovered; but there is evidence tending to show that the fire resulted because of the dry grass and weeds which the defendant's employés had cut and left scattered upon its right of way and about the ties of the plaintiff, and there is no evidence that the plaintiff knew of that condition, or of such acts on the part of the defendant. The plaintiff had a right to assume that the defendant, during a period of excessive drought, would not cut the weeds and grass upon its right of way and allow the same to remain scattered, and in such manner that the almost inevitable result would be the igniting of the same by sparks from its passing engines. At all events, we think the question of plaintiff's contributory negligence was, under all the circumstances, one of fact for the jury, and that its finding in that regard ought not to be disturbed. The rule upon this proposition, which is supported by abundant authority, is stated in the headnote in Stackus v. Railroad Co., 79 N. Y. 464:

"In actions for negligence, to justify a nonsuit or the direction of a verdict on the ground of contributory negligence, the undisputed facts must show the omission or commission of some act which the law adjudges negligence. The negligence must appear so clearly that no construction of the evidence drawn from the facts will warrant a contrary conclusion."

It follows that the judgment and order appealed from should be affirmed, with costs.