## CHARLESTON.

### WILSON BROS. v. BUSH, *Receiver*.

Submitted September 15, 1910. Decided November 28, 1911.

1. RAILROADS—*Operation—Fires—Presumption and Burden of Proof.*

   In an action for damages by fire, alleged to have been caused by the negligence of a railroad company, proof of communication of the fire from an engine of the company raises a presumption of negligence which the defendant must repel by showing proper construction, equipment and operation of the engine, to escape liability. (p. 27).

2. SAME—*Operation—Fires—Instructions.*

   It is error to instruct the jury in such a case that the defendant must prove its engine was equipped "with the best approved appliance for preventing the escape of fire." (p. 28).

3. SAME—*Operation—Fires—Contributory Negligence—Question for Jury.*

   An owner of lumber, depositing it on premises of a railway company adjacent to its right of way, in common with others, primarily for shipment and incidentally for storage and preparation for shipment, in conformity with a license, usage and practice of long standing, at a place at which no railway agent is maintained and at which rubbish and debris have accumulated on the track, the vacant strip alongside of it and the ground on which the lumber has been placed, and a dilapidated shed and platform, used for storage and loading, stand, is not guilty of contributory negligence as matter of law. (p. 29).

4. SAME—*Operation—Fires—Contributory Negligence.*

   Assuming evidence of negligence on the part of the defendant, the plaintiff's right to recover, in such a state of the evidence of contributory negligence, is tested by the inquiry whether he exercised such care and caution as a reasonably prudent and careful man would have exercised under like circumstances, in placing his lumber upon the premises, without providing for its care by some person. (p. 31).

Error to Circuit Court, Randolph County.

Action by Mark S. Wilson and another, partners under the firm name of Wilson Bros., against B. F. Bush, receiver. Judgment for plaintiffs, and defendant brings error.

*Reversed and Remanded.*

*Benj. A. Richmond* and *E. A. Bowers,* for plaintiff in error.

*Talbott & Hoover,* for defendants in error.

POFFENBARGER, JUDGE:

Wilson Bros. recovered a judgment for $935.00 against B. F. Bush, Receiver of the Western Maryland Railroad Company, as the value of certain lumber destroyed by fire, occasioned by alleged negligence of the defendant.

The refusal of the court to give defendant's instruction No. 2, placing upon the plaintiffs the burden of proving failure of the defendant to use ordinary care and prudence in selection of spark arresters for the engines from which the fire originated and in operating said engines and keeping the spark arresters in repair, is assigned as error. This instruction was properly refused for two reasons. It does not correctly propound the law. After a fire has been shown to have started from sparks emitted by an engine of a railroad company, the burden is upon the defendant to show that its engine was in good repair, properly equipped and operated. *Jacobs* v. *Railway Co.,* 68 W. Va. 618. Inconsistent doctrine is not enunciated in *Snyder* v. *Railroad Co.,* 11 W. Va. 14. The clause in the third proposed instruction in that case, found in the syllabus thereof and relied upon here, was there disapproved. If it were a sound proposition, it was given as a part of defendant's instruction No. 5, and also substantially given in his instruction No. 3. Instructions need not be repeated. The defendant thus appears to have had more favorable rulings, upon the subject matter of his instruction No. 2, than he was entitled to.

As an instruction, given at the instance of the plaintiffs over the objection of the defendant, pertaining to the duty of the latter in respect to the equipment of his engines, and made the subject of an assignment of error, stands closer in logical connection to the one just disposed of than any of the others, it will be now considered. By it the jury were told the defendant was under a duty to equip his engine "with the best approved appliances for preventing the escape of fire." In some instances, courts have defined the duty of railroad companies in this connection by the use of the terms "best approved" and "most approved," but these expressions have been qualified by additional

terms, such as "in common use," "of practical use" or "which has been approved by actual test." *Railroad Co.* v. *Bailey,* 222 Ill. 480; *Mills* v. *Railroad Co.,* 116 Ky. 309; 33 Cyc. 1333. This qualification gives the jury some measure or standard by which to determine whether the equipment is the "best approved" or "most approved." Without it, they may determine it in such manner as may seem to them right and just, but in so doing, they may adopt an entirely erroneous test. It is well settled, even in those states in which this measure of responsibility is adopted, that a railroad company is not bound to accept and use or experiment with every new invention, or one which is accorded preference in the opinion of mechanics or other experts. The element of test by experience is a necessary one. In those jurisdictions in which the rule above stated obtains, this instruction would be apparently bad for omission of the limitation we have mentioned.

Most of the decisions in which this strict rule is observed are governed to some extent by statutes, defining the duties of railroad companies in respect to equipment. There may be some instances in which it rests solely upon supposed common law principles; but the great weight of authority throughout the country requires of railroads no more than reasonable and ordinary care in the equipment of their engines. "As a general rule it is the duty of a railroad company to use reasonable precautions to provide locomotives so constructed and equipped as to avoid the unnecessary communication of fire to premises adjoining its road." 33 Cyc. 1332. The requirement of such a degree of care plainly does not impose duty to adopt the utmost precautions against injury, nor make the railway company an insurer against damage to property on its right of way or premises adjoining it. Accordingly, courts generally hold railroad companies not absolutely bound to use the safest and best appliances to prevent the escape of sparks. "It is the duty of railway companies to adopt and use on their locomotives approved appliances in general use to prevent the escape of sparks and fire * * * A railway company is not bound to adopt any particular kind of appliances or machinery for the prevention of fires, and it cannot be held guilty of negligence for failing to adopt a different kind or pattern of appliances than that which it has adopted, if it has exercised reasonable care in the selection and the latter is approved and

in general use." Elliott on Railroads, sec. 1224; *Railway Co.* v. *Reese*, 85 Ala. 497; *Railway Co.* v. *Thompson-Hailey Co.*, 79 Ark. 12; *Clisby* v. *Railway Co.*, 78 Miss. 937; *Flynn* v. *Railroad Co.*, 142 N. Y. 11; *Bottoms* v. *Railroad Co.*, 136 N. C. 472. This rule is in accord with the general principle applicable to persons using fire upon their own premises. Nothing beyond reasonable care and prudence under the circumstances of the particular case is required. *Mahaffey* v. *Lumber Co.*, 61 W. Va. 571. What amounts to reasonable and ordinary care is not determinable by any arbitrary rule, of course. As the use of fire is attended by varying conditions of duration, weather and exposure, the exercise of ordinary care includes the adoption of methods and measures of safety, determinable by such conditions. One who uses fire constantly would naturally fall under a higher degree of duty than one who uses it only casually and to a limited extent. But reasonable care is all that can be required under any circumstances, and the adoption by a railroad company of those inventions and mechanisms generally used for the purpose of preventing the escape of fire, reasonably well adapted to the purpose and efficient, as shown by the test of experience, is obviously the exercise of such care. As to what is the best approved appliance reasonable men, though qualified by experience in the use thereof, might differ in opinion, and jurors might differ from the uniform opinion of such persons, and all might well agree that the appliances, subjected to the comparative test, are all reasonably well adapted to the prevention of fire and in extensive use by railroad companies, all honestly differing in opinion on the question of relative merit. We are, therefore, of the opinion that this instruction was clearly erroneous in that it propounded a wrong test or measure of duty and also may have confused and misled the jury.

The rejection of defendant's instructions Nos. 6 and 7 is complained of. On the right of way and the yards upon which the lumber had been placed, there was an accumulation of inflammable rubbish, due to the storage and loading of lumber, pulp wood, tan bark and other products of the forest at that point. Besides, an old shed and platform, standing near the railroad, were in such condition from dilapidation and decay as to render them likely to ignite easily. In the shed, the plaintiffs had stored about 12,500 feet of cherry lumber, and, outside of it,

stacked about 40,000 feet of maple lumber. The latter had been sold and was awaiting shipment, but the other had not. Years before the occurrence of this fire the shipment of lumber from that point had been heavy, and the railway company, then operating the road, maintained a regular station there with an agent in charge; but, for a considerable period of time prior to the occurrence of the fire, the company had ceased to maintain an agent at that point. However, lumber was still brought there for storage and shipment in smaller quantities than it had been in previous years. The shed and platform, though on the railway company's premises, it being the owner of a large tract of land through which the railway ran, but not on the portion thereof used for a right of way, had been built by the lumber company. That company having completed its large operations, left these structures standing on the premises and they had ever since been used by the plaintiffs and others for shipping and storing lumber with the acquiescence of the railway company. Defendant's instruction No. 6 was based upon these facts as constituting evidence of contributory negligence on the part of the plaintiffs in placing their lumber upon these premises, with knowledge of the conditions and without adopting any measures to protect it from fire. It proposed to submit to the jury, upon the evidence, the question of the existence of these conditions and have the court tell them their verdict must be for the defendant, if they should find such facts, even though there was some evidence of negligence on the part of the defendant. As the defendant acquiesced in the use of the premises for the purposes aforesaid by the plaintiffs and others engaged in the lumber business at that place, his title to the premises seems to be an immaterial matter. In making such use of the property, plaintiffs were not trespassers. They were licensees, making a use of the property which bore some relation to the defendant's own business. They brought their lumber there for shipment. This was the main purpose. Storage and preparation for shipment were subordinate and incidental uses. As long as the defendant permitted such use and accepted lumber at that point for shipment, such occupation and use of the premises may well be deemed to have rested upon invitation. The relation of the parties, therefore, was analogous to that subsisting between a railroad company and an owner of adjacent property, each of

whom is under some degree of duty. The owner of land adjacent to a railroad may rightfully make use of his property. *Fair Ass'n* v. *Railway Co.*, 42 Neb. 105; *Murphy* v. *Railway Co.*, 45 Wis. 222; *Railway Co.* v. *Pennell,* 94 Ill. 448. In doing so, however, he must observe and consider the hazard or danger of fire incident to the operation of the railroad, and, if he does an act or omits a precaution, which will obviously result in injury to his premises or movable property thereon, he cannot recover. In the use of his property, he must respect the right of the railroad company to make reasonable use of its property. *Coates* v. *Railroad Co.*, 61 Mo. 38; *Brown* v. *Railroad Co.*, 41 Wash. 688; *Murphy* v. *Railway Co.*, 45 Wis. 222; *Railroad Co.* v. *Owne,* 25 Kan. 419; *Railroad Co.* v. *Pennell,* 94 Ill. 448; *Railway Co.* v. *Crabb,* 80 S. W. 408. And, on the other hand, railway companies must exercise reasonable and ordinary care not to injure the adjacent property. Each has the right to use his own property and is bound to abstain from conduct which will obviously and necessarily injure that of his neighbor. Nevertheless, the great diversity of facts and circumstances entering into the question of risk or hazard deprives the courts, in most instances, of the power to say, as matter of law, that certain facts established by the evidence impose liability or defeat recovery. The probability of danger arising out of a given condition or state of facts is generally a practical question about which reasonable men may differ in opinion, and, in such cases, the question of negligence on the part of the defendant, or contributory negligence on the part of the plaintiff, generally lies within the province of the jury and not of the court. Whether the plaintiffs assumed the risk of danger to their lumber or must be deemed to have known they were taking upon themselves a hazard, depends upon the imminency of that danger and the probability of injury. Their right to recover, therefore, depends upon the exercise or non exercise by them of such a degree of care and prudence, as ordinarily cautious and prudent men would have exercised under like circumstances. The instruction requested omits this vital element. If given, it would have told the jury they must hold the plaintiffs guilty of contributory negligence if they found certain facts, not if they should be of the opinion, in view of the facts found, that the plaintiffs had neglected the exercise of the degree of care above defined. Hence, we think the court did not

err in refusing the instruction. This conclusion is probably justified by another omission, if its theory were correct. It does not include the important element of long use of the yard without a loss from fire. For years, other people had done just what these plaintiffs did without loss, and this circumstance in evidence bears directly upon the nature and extent of the hazard.

Instruction No. 7 was properly refused because it unduly narrowed the duty and responsibility of the defendant. Properly asserting the right of the railway company to operate its trains by the use of fire for the generation of steam, and asserting necessity of proof of negligence in respect to its engines as a requisite to liability, it said the plaintiffs assumed all risk of loss of their lumber, if the defendant operated its engines in a lawful manner and with reasonable care and skill. It thus omitted the element of duty on the part of the defendant respecting the care of its track and right of way. In other words, all that it assumes as matter of law as likely to be established by the evidence in the opinion of the jury, might be true and yet the defendant would be liable for failure properly to care for its track. In view of a large amount of lumber piled up in close proximity to its road, upon its invitation, and with its consent, and knowledge of its exposure to injury by reason of the non-maintenance by the owner or any care-taker or protector, the defendant could not justly nor consistently with law allow an accumulation of rubbish on its right of way likely to be ignited by such sparks as necessarily escape from engines and to carry the fire from the right of way to the lumber or to other rubbish which would convey it to the lumber. "As it is impossible to entirely prevent the escape of sparks and coals of fire from railway locomotives, and as the sparks and coals that do escape usually fall on the right of way, it is held that it is the duty of a railway company to keep its track and right of way free from dry grass, weeds and other combustible materials which are liable to be ignited by sparks and coals of fire and thus communicate fire to the premises of others, and if it fails to discharge this duty and permits the fire to escape to adjoining premises, it may be found guilty of negligence." Elliott Railroads, sec. 1226. This text, as well as some not here quoted, is sustained by abundant authority. In view of the acquiescence of the defendant in the use of the adjacent premises for the purposes for which they were used, establishing for all

practical purposes the relation which subsists between a railway company and the owner of adjacent premises, we think the principle clearly applicable here and fully justified the court in refusing this instruction.

In holding the question of contributory negligence to be one for jury determination, in passing upon the propriety of the rejection of defendant's instruction No. 6, we have incidentally decided the only remaining questions, namely, whether the court erred in refusing a request to direct a verdict in favor of the defendant and in overruling a motion to set aside the verdict. In this conclusion, we decline to follow the decision in *Post* v. *Railroad Co.*, 108 Pa. St. 585, relied upon by the plaintiff in error. Comparison of the opinions will reveal the difference in views leading to diverse results. Hence, comment is unnecessary.

For the error in giving plaintiffs' instruction No. 1, the judgment must be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and Remanded.*