# L. R. MARTIN TIMBER COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 21, 1913.

Nos. 18,234—(106).

**Fire on right of way — question for jury.**
1. In this action for damages for the destruction of railroad ties, piled on defendant's right of way, alleged to have been caused by fire communicated to the ties through defendant's negligence, it is *held* that it was for the jury to determine whether plaintiff's occupation at the time of the fire was that of a trespasser.

[1] Reported in 144 N. W. 145.

Note.—The question of the liability of a railroad for burning property stored or piled on right of way by licensee is treated in a note in 1 L.R.A.(N.S.) 533.

**Duty of defendant.**

2. The jury was justified in finding that the ties were there, when destroyed, under license or tacit consent of defendant. And if so found, the measure of defendant's obligation to avoid a negligent fire as to plaintiff's ties was the same as if these had been piled adjacent to, but off the defendant's land or right of way.

**Negligence — questions for jury.**

3. Defendant's negligence and plaintiff's contributory negligence were for the jury, and not the court, upon this record.

**Evidence of custom.**

4. No error is found in the reception of evidence to show that it had been the practice during many years to pile ties and wood for shipment at the place where these ties were placed.

**Wisconsin statute.**

5. The instruction that the statutes of Wisconsin required railroad companies to keep their right of way reasonably free from dead grass and débris *held* correct.


Action in the district court for St. Louis county to recover $1,399.-50 for defendant's negligence in operating a locomotive so as to throw sparks which set fire to the dry grass and other combustible material upon defendant's right of way, whereby certain cedar ties located on such right of way were totally destroyed. The answer alleged that without right or authority from defendant, and against its protest, plaintiff several years prior to March, 1910, trespassed upon defendant's right of way and piled thereon ties of the value not to exceed $100, which were destroyed by fire which was not caused through any negligence on its part or of its servants, and the loss of the ties was proximately caused by the negligence of plaintiff and because of its unlawful trespass upon defendant's grounds, and because the burning of the ties originated from independent sources through no fault or omission on the part of defendant. The case was tried before Dibell, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict of $1,449.83 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Baldwin & Baldwin,* for appellant.
*Fryberger, Fulton & Spear,* for respondent.

HOLT, J.

The action is for damages on account of the destruction of 3,000 railroad ties by a fire attributed to defendant's negligence. Verdict for plaintiff, and appeal by defendant from the order denying its alternative motion for judgment or a new trial.

The main facts are these: Dedham is a small station on defendant's railway line in Wisconsin, near Superior. The usual side track facilities for loading and unloading shipments are there. In the fall of 1907 W. E. Culligan made a contract with one L. R. Martin to sell and deliver f. o. b. cars at Dedham a quantity of railroad ties. Pursuant thereto and prior to March, 1908, Culligan piled the ties in question along the side track at Dedham. The piles extended at one place to within 30 feet of the main track. Defendant claims that Culligan was notified by it that he could not pile the ties there without a permit. This was disputed. On March 6, 1908, defendant by letter notified L. R. Martin that the ties would have to be removed or else a permit obtained for their remaining. The terms of the permits usually issued by defendant are not disclosed. Martin replied that he would take up the matter of permit as soon as he ascertained the space required for all the ties. However nothing was done, by either Martin or defendant, and in May, 1908, Martin sold the ties to plaintiff. The ties burned March 23, 1910. It was claimed that defendant negligently suffered dry grass and rubbish to accumulate on its right of way; that it was negligent in the matter of spark arresters on its locomotives; that fire was allowed to escape from one of its locomotives setting fire to the dry grass which spread to, and consumed the ties. The answer, and contention of defendant upon the trial, was that in piling and keeping the ties on its right of way plaintiff and its predecessors in interest were trespassers, that defendant was guilty of no negligence, and that plaintiff by its own negligence contributed to the loss.

The defendant claims that it is entitled to judgment because plaintiff was a trespasser, for to such a one it is not liable for any but

wilful or wanton negligence, of which there is no evidence. And further, even if it be held that plaintiff was a licensee, defendant's duty of care became no greater than toward the trespasser. Contributory negligence is also urged as a ground for judgment in defendant's favor.

The court charged the jury that if it was found that the keeping of the ties on defendant's right of way was a trespass no recovery could be had. The testimony of defendant that Culligan and his teamster had been forbidden to pile on the railroad grounds was denied to such an extent that the claim of trespass in placing the ties there became a fair question for the jury. And we must now assume, unless the evidence is compelling to the contrary, that plaintiff was not a trespasser. But it is insisted that the written evidence, namely: The two letters above referred to, show conclusively that after March, 1908, the owner of the ties was a trespasser upon defendant's right of way. We do not regard the two letters, nor the failure of L. R. Martin to at once obtain a permit, as necessarily conclusive upon the status of the occupancy of the plaintiff of the right of way since it became owner of the ties. Although L. R. Martin was not the legal owner of the ties when the correspondence took place we may concede that he was bound to take notice of the wishes of defendant in the matter. However nothing came of the correspondence and shortly thereafter Mr. Martin became incapacitated for business. In May, 1908, the present plaintiff was organized to take over his affairs and acquired these ties. L. R. Martin was never an officer or agent of the corporation. Between that time and their destruction defendant suffered them to remain without a word of protest. It also appears that, because of the panic in the fall of 1907, there was no demand for ties until sometime in 1909 or 1910. Hence the failure to ship them out before the fire. It is true that the president of the plaintiff, G. W. Martin, knew all the time that defendant generally requires shippers who pile forest products on the right of way except for immediate shipment to obtain permits, but he also testified that to his knowledge this rule was not inflexible. We are not prepared to hold that, under this long acquiescence in the location of ties, with full knowledge of the actual situation and defendant's practice to

not always insist on permits, the jury were not justified in concluding that, at the time of the fire, the occupancy of the right of way by plaintiff was not that of a trespasser but of a licensee.

But it is insisted that, even so, defendant could not be held liable unless the destruction of the ties was caused by its wilful or wanton negligence. The contention is important and vital. A long line of ·decisions are cited showing the application of this rule in personal injury actions brought by licensees, among them the following from this court: Schreiner v. Great Northern Ry. Co. 86 Minn. 245, 90 N. W. 400, 58 L.R.A. 75; Fredenburg v. Baer, 89 Minn. 241, 94 N. W. 683, and Klugherz v. Chicago, M. & St. P. Ry. Co. 90 Minn. 17, 95 N. W. 586, 101 Am. St. 384. It is however true that all licensees cannot be placed in one class. Some are denominated mere licensees, others are licensees upon the invitation express or implied ·of the licensor. Where it is evident that the use of the license is intended not only for the benefit of the licensee but of the licensor as well, there arises some duty of care upon the part of the latter towards the former other than the one owing to a mere licensee. Railways have stations, stopping places and sidetracks for the purpose of receiving goods and property for transportation. Those persons who bring upon the premises of the railway, at the customary places, property intended for shipment, and leave it there for such purpose in the usual manner are not to be placed in the class of mere licensees. The benefit of the use of the railway premises for this purpose is shared by the railway. After permission, express or implied, to make use of a railway right of way for piling products intended for future shipment, the owner of property so piled in suits for its negligent destruction by fire has, under some authorities, been held to be in the same position with respect to the railway company's negligence and his own as if he were an adjacent landowner with the destroyed property thereon.

In Wilson Bros. v. Bush, 70 W. Va. 26, 73 S. E. 59, parties had been allowed to erect and maintain on the land of the railway a shed and platform used in piling, storing and shipping lumber and, when these structures together with a large quantity of lumber were destroyed by fire set by the defendant's locomotive, the contention was

that the erection and maintenance of the structures was a trespass and no recovery could be had. The opinion after stating that the title to the real estate becomes immaterial says: "In making such use of the property, plaintiffs were not trespassers. They were licensees, making a use of the property which bore some relation to the defendant's own business. They brought their lumber there for shipment. This was the main purpose. Storage and preparation for shipment were subordinate and incidental uses. As long as the defendant permitted such use and accepted lumber at that point for shipment, such occupation and use of the premises may well be deemed to have rested upon invitation. The relation of the parties, therefore, was analogous to that subsisting between a railroad company and an owner of adjacent property, each of whom is under some degree of duty."

See also Boston Excelsior Co. v. Bangor & A. Ry. Co. 93 Me. 52, 44 Atl. 138, 47 L.R.A. 82; Grand Trunk R. Co. v. Richardson, 91 U. S. 454, 23 L. ed. 356.

The syllabus to the well-considered decision written by Judge Lurton in the case of Cincinnati, N. O. & T. P. Ry. Co. v. South Fork Coal Co. 139 Fed. 528, 71 C. C. A. 316, 1 L.R.A.(N.S.) 533, in our opinion, expresses the true rule, viz. "A railroad company is liable to the owner of lumber piled on its right of way with its consent for the loss of such lumber by fire occurring through its negligence in the operation of its trains, the measure of its obligation to avoid a negligent fire causing the destruction of the lumber being precisely the same as it would have been had the lumber been stacked near to, but off, its premises."

This seems to be the reasonable rule unless there should be read into every license a release of the licensor for subsequent negligence. It is doubtful whether such a rule should obtain even in the case of a bare licensee. Suppose the owner of a private way tacitly permits another to drive over it and, while so doing, the owner negligently drives against him causing damage, would it be a defense that the injured one was a mere licensee? We doubt it. We do not think such a release is within the contemplation of the parties as a condition upon which a railroad company by express or implied consent allows ship-

pers to make use of its right of way for the purpose of piling thereon forest products in the usual and convenient way for the anticipated transportation. In considering whether railway companies owe some duty to the owners of property placed on its right of way for intended future shipment to protect against negligent fires, it is not out of place to bear in mind that Wisconsin, like our own and many other states, does by statute require the companies to keep their right of way so as to prevent the setting of fires. Such laws are undoubtedly designed to protect against the destruction of all property whether situated upon or off the land of the railway. If the jury found plaintiff to have been a licensee of the place occupied by its ties at the time they were consumed, they would be justified in returning a verdict for plaintiff if the fire was due to defendant's negligence and plaintiff's negligence did not contribute to the loss. There is authority for the proposition that a railroad is not liable to a licensee for the destruction by fire of property piled or stored on its right of way for shipment except for wilful or wanton negligence (Connelly v. Erie R. Co. 68 App. Div. 542, 74 N. Y. Supp. 277), but we think the rule in Cincinnati N. O. & T. P. Ry. Co. v. South Fork Coal Company, supra, the more reasonable and just. 2 Elliott, Railroads, § 1235, states that, when property destroyed by fire is placed on the right of way by agreement express or implied, there is liability upon proof that the fire was caused by the company's negligence. Some authorities to the contrary are also there cited.

It is said plaintiff was guilty of contributory negligence beyond question in suffering these dry ties to remain under the conditions existing. The cases relied on by defendant are: Paris, M. & S. P. Ry. Co. v. Nesbit, 11 Tex. Civ. App. 608, 33 S. W. 280; Post v. Buffalo, P. & W. R. Co. 108 Pa. St. 585, and Chicago, B. & Q. R. Co. v. Cook, 18 Wyo. 43, 102 Pac. 657. We, however, deem the question of contributory negligence upon this record to have been for the jury. The duty of keeping its right of way reasonably free from inflammable material and débris was laid by statute upon defendant. There is no evidence that plaintiff, its officers or agents, knew that defendant was negligent in this respect. Until plaintiff knew to the contrary it might assume that defendant kept its right of way in the manner required

by law. And the cases herein before cited from the Federal courts as well as the one from Maine tend to support the view that plaintiff was not guilty of contributory negligence as a matter of law. We also note Gibbons v. Wisconsin Valley R. Co. 66 Wis. 161, 28 N. W. 170, to the same effect. The late case of Brunner v. Minneapolis, St. Paul & S. S. M. Ry. Co. 155 Wis. —, 143 N. W. 305, holding that contributory negligence barred a recovery for the negligent destruction of a quantity of wood piled on the right of way of the railroad, is placed by the majority opinion mainly on the owner's neglect, after knowledge that fire had escaped, to take precaution to protect the wood. It might also be said that the dissenting opinions state cogent reasons for the claim that reasonable men on the facts of that case held contrary views upon the owner's contributory negligence.

No reversible error was made in receiving over defendant's objection testimony to the effect that the place where the ties were piled had been used during many years for such purpose. It bore on the question of the proper place and defendant's acquiescence, notwithstanding the two letters mentioned, and even if such use had been confined to cases of permits, which however does not appear to have been uniformly so.

Error is assigned upon this instruction to the jury: "The statute of Wisconsin requires railway companies to keep their rights of way reasonably clear of dead grass, refuse material and débris." The statute of Wisconsin pleaded and proven in so far as it bears on this point, provides: "Every railroad company shall, at least once in each year, as far as practicable, cut and burn or remove from its right of way all grasses and weeds, and burn and remove therefrom all brush, logs, refuse material and débris within a reasonable time," etc. The instruction was in substantial accord with the statute. We fail to find any error in the record which justifies this court in granting a new trial.

Order affirmed.