HOWARD ROADMAN v. C. E. JOHNSON MOTOR SALES AND ANOTHER.[1]

April 4, 1941.

No. 32,638.

[1]Reported in 297 N. W. 166.

*Johnson, Sands & Brumfield* and *Nesbitt, MacPhail & Miller,* for appellant.

*A. E. Bryngelson,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff's negligence action resulted in a verdict for the corporate defendant, but he prevailed against defendant Gadbois. (For the sake of brevity, we shall refer to defendants as "Johnson" and "Gadbois.") On plaintiff's motion, the court granted a new trial as to Johnson for errors of law specified in its order. It is from that order that Johnson appeals.

Plaintiff, an insurance salesman, went to the Johnson garage pursuant to an appointment theretofore made with one Tonn, an

employe of Johnson. His purpose was to sell Tonn a policy of liability insurance. The appointed hour was between 12 noon and one o'clock, so arranged because Tonn's hours of labor did not include the noon recess. Plaintiff arrived shortly before 12. Tonn was then engaged in making certain adjustments on Gadbois' truck, which had been brought there for attention. Another employe of Johnson had greased it before turning it over to Tonn in proximity to what is referred to as the "battery rack." The truck had been left in gear. After Tonn had worked on the mechanical part of the truck he directed Gadbois to start the motor to see how it would act, or words to that effect. Gadbois, standing at the side of his truck, turned on the ignition, pressed the starter, and as a result the truck lurched forward and ran upon and against plaintiff, who was near the front of it, so as to catch one of his legs between the truck and the battery rack.

Liability is predicated, as against Gadbois, upon the theory that he negligently started the motor without first ascertaining that it was in neutral position. As to Johnson, the negligence charged is that Tonn's act of directing Gadbois to start the motor without first ascertaining that it was safe to do so combined with the negligent act of Gadbois in causing the injury to plaintiff. The evidence establishes that there was a rule in force at this garage that no car was to be left in gear, but, instead, the hand brake was to be used to keep the vehicle from moving. Gadbois testified that when he turned his truck over to be greased the motor was in a neutral position and that thereafter and until he started the motor pursuant to Tonn's direction he had done nothing to change that position.

There is also testimony for the company to the effect that Mr. Johnson, who observed plaintiff in the garage and did not want his employes to be bothered during their working hours, told plaintiff to depart. This plaintiff denies. The accident happened shortly after 12 o'clock.

The instructions deemed material on this appeal may thus be summarized:

"A licensee is one who goes upon the premises of another with some permissive right." As such, "the owner must refrain from actively causing him harm.

"But," continued the court, "a mere licensee has not even the rights of a licensee. The owner owes him no duty to watch out for him, no duty to protect him against any of the hazards or dangers in his place of business. He is not required to exercise any vigilance with respect to the safety of the mere licensee, but he is not permitted, under the law, to wilfully and wantonly inflict injury or cause harm to him. If he does it wilfully or intentionally, that is by an affirmative act on his own part, then of course he may be liable for the consequences. *Now, under the evidence in this case Roadman was a mere licensee.* He went there for the purpose of his own business and not for any benefit to the Johnson Sales Company, and that makes him a mere licensee, and and not a licensee."

Accordingly, "to hold Johnson Sales Company liable in damages on the evidence in this case, you must find that Tonn wilfully, intentionally, or with reckless disregard of the safety of Roadman directed Gadbois to start the motor that was likely to and would naturally cause harm to Roadman. *Mere negligence or carelessness on the part of Tonn is not sufficient. It must be more than that. It must be an intentional, affirmative act that endangers Roadman and would result in injury."* (Italics supplied.)

The jury, after considering the matter for some time, came back for further instructions. One of the jurors said:

"Your Honor, there seems to be some question of doubt as to the statement you made this morning in regard to this plaintiff's rights on the premises. I wonder if we could hear that quotation * * *?

The Court: "Very well. Mr. Reporter, will you find it and read it?" (The reporter did so.)

The Court: "Does that answer your question?

Juror: "I think we would like to know what you mean by an *intentional, affirmative act.*

The Court: "Well, that is about as plain English as I can use. As I explained in there, *not negligence, but actively, wilfully doing something with the intent to cause harm and injury*—I can't see how I can explain that any more. That is the law.

Juror: "Well, naturally we assume that he wouldn't do a thing of that sort intentionally. It has got to be an accident of some kind.

The Court: "I am afraid I can't comment on that." (Italics supplied.)

Thus, the determinative issue presented to and decided by the jury was not whether Johnson's servants had acted negligently, but rather and only whether they had been "actively, wilfully doing something with the intent to cause harm and injury." The verdict establishes, even if the record should not require, that intentional or wilful conduct is out of the case. So the only question is whether the court was justified in granting a new trial for "errors of law occurring at said trial" in the circumstances related.

■ Legal duty in any particular situation "prescribes the measure of care to be exercised by the party charged with negligence." Such duty determined, the only thing remaining is "whether that duty was breached" by defendant, thereby causing plaintiff harm. Ruth v. Hutchinson Gas Co. 209 Minn. 248, 255, 296 N. W. 136, 140.

■ Negligence as foundation for legal liability has for its basis that "every person in the conduct of his affairs is under a legal duty to act with care and forethought; and, if injury results to another from his failure so to do, he may be held accountable in an action at law." 20 R. C. L. p. 7, § 2, and cases under note 6. In other words, as stated in Heaven v. Pender [1883] L. R. 11 Q. B. D. 503, 509:

"Whenever one person is by circumstances placed in such a position with regard to another that everyone of ordinary sense who

did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."

That principle has met with general approval here and elsewhere. Thus, in Depue v. Flatau, 100 Minn. 299, 303, 304, 111 N. W. 1, 8 L.R.A. (N.S.) 485, this court adopted the holding quoted as a basis for imposing liability. Our cases are cited in 4 Dunnell, Minn. Dig. (2 ed. & Supps.) § 6974.

3. The general rule is that a mere licensee, like the trespasser, must take the premises as he finds them. Mazey v. Loveland, 133 Minn. 210, 158 N. W. 44, L. R. A. 1916F, 279; Sage's Admr. v. Creech Coal Co. 194 Ky. 415, 418, 419, 240 S. W. 42. But this does not absolve a negligent defendant from liability where his active or affirmative acts of negligence are the cause of plaintiff's hurt. That distinction is generally recognized in the cases. Ingalls v. Adams Express Co. 44 Minn. 128, 129, 46 N. W. 325; Klugherz v. C. M. & St. P. Ry. Co. 90 Minn. 17, 22, 23, 95 N. W. 586, 101 A. S. R. 384; Widing v. Penn Mut. L. Ins. Co. 95 Minn. 279, 282-283, 104 N. W. 239, 111 A. S. R. 471. See 50 Harv. L. Rev. 725, "Fifty Years of Torts," especially at pp. 736 and 739.

Everyone reading the many cases defining and applying to particular fact situations such terms as "invitee," "licensee," " 'bare' or 'mere' licensee," "tolerated intruders," "trespassers," etc. cannot fail to see much conflict and confusion among them. See 25 Wd. & Phr. (Perm. ed.) pp. 187 to 209. But we think this general principle may be gathered, that "the greater the chance of injury, the greater the precautions which must be taken to prevent it." 50 Harv. L. Rev. 741.

The American Law Institute has defined and classified these differences. Distinctions are drawn between trespassers, licensees, gratuitous licensees, and business visitors (Restatement, Torts, §§ 329-332) with attendant duties and obligations upon the pos-

sessor of land. General distinctions between conditions on the premises, known and unknown, and activities upon the premises toward these various classes, are drawn. Relative to the case at hand, § 341 appears to be pertinent:

"A possessor of land is subject to liability to licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by his failure to carry on his activities with reasonable care for their safety, unless the licensees know or from facts known to them, should know of the possessor's activities and of the risk involved therein."

The jury could find that this plaintiff was entitled to the care prescribed by this section by virtue of his status as a "gratuitous licensee," described as one—

"whose presence upon the land is solely for the licensee's own purposes, in which the possessor has no interest, either business or social, and to whom the privilege of entering is extended as a mere favor by express consent or by general or local custom." Restatement, Torts, § 331, comment $a(1)$.

The facts here shown accord with these principles.

■ Plaintiff's injury was not caused by any defect or dangerous condition within or upon the garage premises. These were safe for their proper use. No one claims otherwise. His injury was brought about only because Johnson's servants and Gadbois actively put into motion a cause wholly separate and apart from the premises or any mechanical appliance connected therewith. Defendants well knew that plaintiff was there in close proximity to the truck. In the exercise of that care which reasonably prudent men usually employ in like circumstances, they must have known that he was likely to get hurt if the motor was put in motion while the gears were in mesh. So the situation was obviously one bringing into play the rule that "where the presence of a licensee is known to an owner of property or operator of machinery, there is a duty to exercise ordinary care to avoid injury to him." 45

C. J. p. 803. That principle was recited with approval and applied in Hunter v. C. St. P. M. & O. Ry. Co. 180 Minn. 305, 308, 230 N. W. 793, 231 N. W. 920. *Cf.* L. R. Martin Timber Co. v. G. N. Ry. Co. 123 Minn. 423, 144 N. W. 145, Ann. Cas. 1915A, 496. Defendants "should not be allowed 'to defend an indefensible act' by showing that the party injured was engaged in doing something which, as to a third person, was unlawful." Humphrey v. Twin State G. & E. Co. 100 Vt. 414, 418, 139 A. 440, 442, 56 A. L. R. 1011.

Similarly, in Corrigan v. Union Sugar Refinery, 98 Mass. 577, 578, 96 Am. D. 685, where defendants' servant carelessly threw a keg out of a window of its refinery, striking plaintiff, who was walking in a private passageway owned by defendants, the court said:

"The material question is, whether the keg fell upon the plaintiff's head by reason of the negligence of the defendants' servants. * * * Even if he was there * * * under circumstances which did not make them responsible for any defect in the existing condition of the way, they were still liable for any negligent act of themselves or their servants, which increased the danger of passing and in fact injured him."

So, too, in Schmidt v. Michigan Coal & Mining Co. 159 Mich. 308, 311, 123 N. W. 1122, 1123, the court was of the view that the "weight of authority would appear to be that after the owner of premises is aware of the presence of a trespasser or licensee, or if in the exercise of ordinary care he should know of their presence, he is bound to use ordinary care to prevent injury to them arising from *active negligence*." (Italics supplied.)

■ Lastly, it is said that, even granting Johnson's negligence, its negligence was not the proximate cause of plaintiff's hurt. It is asserted that the mere fact that the truck's motor was in gear was not the cause of the accident; that Gadbois' act in putting the motor in motion was the "proximate cause of the happening of the accident." The trouble with that argument is that if the motor had not been left in gear by one of Johnson's servants Gadbois'

starting of it would have been an entirely safe act. The truck in such case would not have gone forward. Johnson and its employes undoubtedly knew of the inherent danger of leaving cars in gear. That plainly was the reason for the rule forbidding such practice, *i. e.,* for the safety of its own employees, its customers, and visitors alike. A jury might well infer that violation of such a rule was a negligent act on the part of Johnson's servants and constituted a link in the chain of causation culminating in plaintiff's injury. The negligence issue as to both defendants was for the jury.

Order affirmed.

LORING, JUSTICE (dissenting).

I cannot see that the rule of the garage that cars should not be left in gear is available to an outsider as evidence of negligence against the garage owner. It was made for the internal regulation of employes, not for the protection of licensees, and this case should be decided without reference to it. In my view, Tonn as a matter of law was not negligent in failing to anticipate gross negligence on the part of Gadbois by not first ascertaining that the gears were in neutral before the motor was started from outside the vehicle. I can conceive of few things more grossly negligent. Gadbois was a customer, not an employe. As to a mere licensee, Johnson was not responsible for Gadbois' negligence, nor was he bound to anticipate that he would be negligent or grossly negligent.

I think that as a matter of law there was no case against the Johnson Sales Company.