# CHARLESTON

## LOWRY v. BALTIMORE & OHIO RAILROAD COMPANY.

Submitted September 4, 1914.    Decided September 22, 1914.

CARRIERS—*Injury to Alighting Passengers—Contributory Negligence.*

Where a railway company provides at its stations reasonably safe and convenient places or platforms from which to receive and discharge passengers, and makes reasonable and proper proclamation of the arrival of its trains, to enable passengers to leave the same by the ways provided, passengers traveling in the day time must use their senses and use the ways provided for alighting from trains; and if they neglect to do so, and attempt to alight elsewhere and at places plainly and obviously dangerous, and are injured by passing trains on parallel tracks without the fault of the railway company, they will not be entitled to recover from the railway company damages for the injuries thus sustained.

Error to Circuit Court, Jefferson County.

Action by William Lowry against the Baltimore & Ohio

Railroad Company. Judgment for defendant, and plaintiff
brings error.

*Affirmed.*

*James M. Mason, Jr.,* for plaintiff in error.

*Brown & Brown,* for defendant in error.

MILLER, PRESIDENT:

Plaintiff complains that the court below sustained defend-
ant's demurrer to his evidence and pronounced judgment of
nil capiat against him.

He sued for damages for alleged injuries sustained while
alighting from defendant's railway train at Kearneysville,
in Jefferson County, due to the alleged negligence of defend-
ant in failing to furnish him with a reasonably safe and con-
venient place on which to alight, and a reasonably safe and
convenient passage therefrom, as it was its bounden and law-
ful duty to do.

The material facts are, that at Kearneysville, defendant's
railroad consists of two main tracks, called the east and west
bound tracks, a third track and two side tracks, the two main
tracks paralleling each other between the side tracks on the
easterly side and the third track on the westerly side of the
right of way, the station house being on the easterly side and
east of the first side track. Good and adequate gravel plat-
forms are provided on the easterly side of the west bound
track, and on the westerly side of the east bound track; and
a convenient plank walk or passage way across the tracks
from the station to each of the platforms is also provided, and
there was no attempt to show negligence of the defendant
company on this score.

On the morning of the day of the accident plaintiff, and
his wife, in company with another colored man, took passage
at Kearneysville on the west bound accommodation for Mar-
tinsburg, returning in the afternoon by the same train, in
charge of the same crew, all three occupying the colored or
"Jim Crow" compartment of the ladies' coach, attached to
the baggage car in front and the smoking car in the rear.
This compartment car was required by the laws of Maryland,
through which the train also ran, but was not required by the

74 W. Va.

laws of West Virginia, and it was optional with colored passengers through West Virginia to occupy or not the colored compartment, no law of the State or rule of the company requiring it; and on the return trip these three colored people were the only passengers in the colored compartment.

There is no conflict in the evidence that just before reaching Kearneysville in the afternoon both the brakeman and conductor called out the name of the station, "Kearneysville, all out for Kearneysville", and plaintiff heard and heeded the call, and that he and his wife made preparations to alight. There is some conflict as to whether the conductor or brakeman said "this way out" as both went back through the ladies' coach to the rear platform of that coach and the front platform of the smoking car, where they stationed themselves as usual to assist passengers in alighting on the gravel platform on the westerly side of the track, and where some fifteen or twenty passengers coming from both coaches got off, including plaintiff's fellow colored passenger who had occupied the colored compartment with him. It was a hot July day; the doors at both ends of the coaches and the windows on the sides were all open and there was nothing to obstruct the view of passengers, not even a door between the two compartments of the car. While the front door of the coach next to the baggage car was open, no trainmen were there directing passengers to go out of that door.

The evidence shows that plaintiff, about forty years of age, had been a hotel porter for several years, and was accustomed to attending the arrival and departure of trains at Charles Town where he resided, and to see passengers board and alight from trains. Nevertheless on the day of his injuries, instead of following other passengers out of the car at the rear door, he elected to go out of the front door and down off the front platform on the east side and into a ditch between the two main tracks leading his wife after him, just as a west bound freight train came along on the west bound track, striking him and injuring him as alleged. No member of the train crew saw him alighting or could have seen him from where they were required to be.

There is some conflict as to whether the front end of this

coach had stopped beyond the southerly end of the platform on the westerly side of the track. The evidence of the trainmen is that it had not, and that if plaintiff had alighted on that side he could have done so in safety. The conductor who so testifies gives as a reason that it was necessary to stop the baggage car along side the platform so that the baggage could be discharged on the trucks on the platform. Plaintiff swears there was a hole there "right below the platform." On cross-examination, in answer to the question whether he "looked on both sides of the track", he answered, "I turned right to the left and stepped down", and that he did not see that on the other side there was a crushed stone walk to get off on. To another question he answered that he saw the car had gone beyond the platform, and that he only stepped down, not thinking of any danger. Later he denied that he had said the car had passed the platform on the Leetown side and that he did not look on that side at all. Recalled he said that he saw that the place where he was getting off was beyond the platform, and that he saw there was a two foot ditch between the tracks before he stepped off into it. Other evidence of the defendant, not seriously controverted by any other evidence, tends strongly to show that the car had not run past the platform on the west side of the train. Plaintiff's testimony can hardly be said to contradict the evidence of defendant's witnesses.

But assuming that it does, and that on the demurrer to his evidence the defendant's evidence in conflict cannot be considered, counsel's theory is that by stopping the front end of the coach beyond any platform there was an implied invitation to alight from that end, and that plaintiff had the right to assume the place was safe and get down into the ditch between the two main tracks, notwithstanding the danger was apparent, and that he was excusable for not using his senses, and looking on both sides, and from following the other passenger out through the coach and alighting from the rear platform, where he could have done so in safety and had the assistance of the trainmen, and defendant was guilty of actionable negligence in not locking the front door, or barricading the platform, or taking some other precaution to

prevent the injury. We do not think this is the law. Railway companies and their trainmen are entitled to assume that passengers unattended and in the broad day light have sufficient intelligence not to walk deliberately into ditches or other places of danger, but will use their God given senses to avoid them. It rarely happens when a train stops at a station that there are not some signs to indicate where to get off, either the announcement of the trainmen, or the direction in which other passengers are moving; and besides one with any degree of intelligence would know that a railway company would not invite or intend that passengers should alight or get off trains in such dangerous places. They should use their senses, or if in doubt ask the aid and assistance of trainmen and not carelessly subject themselves to perilous dangers with eyes wide open in the broad day light.

It is undoubtedly the duty of a railroad company to provide and maintain at its stations reasonably safe and adequate ways for approaching and leaving its trains, and in the night time to keep the same lighted to enable passengers to avoid danger. This is a proposition so well established that authorities are unnecessary. But in the case at bar there is scarcely a suggestion of negligence on the part of the defendant company on this score. Kearneysville is a small village station, and it is conceded that all had been provided in the way of platforms and approaches that could be reasonably required, and that if plaintiff had observed reasonable care he could have left the train in safety. The railroad can not be charged with having invited plaintiff to get off in the ditch, an obviously dangerous place. Everything there repelled the suggestion of a place of alighting. *C. & O. Ry. Co.* v. *Smith,* 103 Va. 326, and *C. & O. Ry. Co.* v. *Harris, Id.* 635, cited and much relied on as precedents by plaintiff's counsel, are in some of their facts not unlike the case at bar; but they are quite distinguishable in the controlling facts. Those cases involved injuries sustained by passengers when alighting from a long excursion train, on a dark night, at a place distant from the regular station platform, and where no lights were provided, and no adequate precautions had been taken by the trainmen in charge to protect the passengers from dangers incident

to alighting from the cars. These were the acts of negligence on which those cases turned, and on which recovery was predicated. No such unusual conditions were present in this case. The train was an every day accommodation train, consisting of an engine, tender, a baggage car, a smoker and a ladies coach.

The suggestion is made that because the station house was on that side of the car on which plaintiff got off he was excusable for falsely supposing he was to get off on that side, unless warned not to do so, and that defendant was negligent in running the freight train past the station while passengers were alighting. Plaintiff, if he used his senses, knew that trains were moving in both directions on the main tracks almost constantly. The company had provided adequate platforms for the use of passengers, and every other passenger got off in safety. It is not pretended that the engineer on the freight train could have discovered plaintiff in time to stop and avoid injuring him, and right of recovery is not predicated on any such theory. Nor was there anything on which to impute negligence to defendant for not stopping the freight train before it reached the station. The trainmen knew that passengers could not cross to the station from the platform while the passenger train intervened. If, under the circumstances of this case, trains on busy tracks were required to stop at every little station to avoid the possibility of injuring careless passengers the wheels of commerce would be unduly and unnecessarily clogged. The law imposes no such obligation on railway companies, and they are not liable to one injured by his own negligence, against which common prudence should have protected him, and it is immaterial that he may have thought he was in a place of safety. *N. & W. Ry. Co.* v. *Hawkes,* 102 Va. 452.

Nothing is better settled than that a passenger can not recover where his own negligence has contributed to his injuries, no matter that the carrier may have also been negligent. Besides the cases cited supporting this view the following are especially in point, and are apt precedents in the case at bar. *Chicago, Rock Is. & Pac. R. R. Co.* v. *Dingman,* 1 Ill. App. 162, 2 Am. Neg. Cases, 486; *L. & N. R. Co.* v. *Ricketts,* 93

Ky. 116, 9 Am. Neg. Cases, 383; *Eckerd* v. *Ch. & N. W. Ry. Co.,* 70 Iowa 353, 3 Am. Neg. Cases, 373.

Upon reason, as well as authority, we are of opinion the judgment below was right and should' be affirmed.

*Affirmed.*