### TWYMAN v. BALTIMORE & O. R. CO.

(Circuit Court of Appeals, Fourth Circuit. February 5, 1924.)

#### No. 2157.

1. **Carriers ⬤⟹327—Intending passenger, struck and killed when crossing track at station, held chargeable with contributory negligence.**

 A man intending to take passage on a train, who started to cross the tracks to the station platform in front of the train, when he saw it approaching, and only about 150 feet away, against warnings by others with him, and was struck and killed, *held* chargeable with contributory negligence, which precluded recovery for his death.

2. **Carriers ⬤⟹327—Degree of care owed intending passenger held not to exempt latter from attempt to cross in front of approaching train.**

 A railroad company owes a higher degree of care for the safety of an intending passenger at a station than to a traveler at a highway crossing, but the distinction does not extend to exempting the passenger from responsibility for attempting to cross in front of an approaching train, plainly visible and very near.

In Error to the District Court of the United States for the Northern District of West Virginia, at Parkersburg; William E. Baker, Judge.

Action at law by Annie E. Twyman, administratrix of the estate of B. F. Twyman, deceased, against the Baltimore & Ohio Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William Beard, of Parkersburg, W. Va., for plaintiff in error.

B. M. Ambler and J. W. Vandervort, both of Parkersburg, W. Va. (Ambler, McCluer & Ambler, of Parkersburg, W. Va., on the brief), for defendant in error.

.Before WOODS, WADDILL, and ROSE, Circuit Judges.

WOODS, Circuit Judge.   This action of Annie E. Twyman, administratrix, against the Baltimore & Ohio Railroad Company, to recover damages for the death of B. F. Twyman, was originally brought in the circuit court of Wood county, W. Va., and afterwards removed to the District Court of the United States for the Northern District of West Virginia.

We think the instruction to the jury to find a verdict for the defendant was required by the evidence.   There is little dispute as to the material facts.   B. F. Twyman resided in Wirt county, about 4 miles from Eaton, a flag station on the Baltimore & Ohio Railroad.   On the morning of February 25, 1921, he came to Eaton, intending to take the train to Parkersburg.   At the station are three tracks, running east and west; the main line on the south, and north of it two sidings. The station platform is immediately south of the main line track.   Directly north of the platform is the Swearingen store, just beyond the right of way.   No plank or other roadway was provided over the three tracks for the use of passengers, and the cinder ballast between the ties did not extend to the top of the ties or rails.   For a half mile east of the station the track was straight, with an unobstructed view. The station platform was uncovered.   Being a flag station, Eaton was without a ticket office.   The store of Swearingen offered the only protection from the weather, and it was customary for those expecting to take passage on the train to go there for shelter.

Twyman and several others were in the store waiting, when some one called, "Train." Immediately every one rushed out on the porch and the sidings.   The train, pulled by two engines, was then in full view about 300 feet from the station platform, running at an estimated speed of 20 to 25 miles an hour.   In the opinion of some of the witnesses this was an unusual speed.   Twyman, carrying a half bushel basket filled with eggs and butter, started on his way across the tracks.   He hesitated and stopped on one of the sidings.   Three of the persons present then warned him that it was dangerous to cross in front of the approaching train, and that he would be allowed to enter the passenger coach on the north side.   One, Farnsforth, went so far, while warning him, as to catch hold of his sleeve.   Despite the warnings, he started across the main line track in an effort to reach the station platform; as he was almost across, the front engine struck him.   He was carried to a Parkersburg hospital, where he died that afternoon.

According to the testimony of the engineer of the front engine, he alone was responsible for the mechanical operation of the train and in complete control.   He blew for the station when he reached the whistle post, about 1,000 feet to the east.   On receiving the conductor's signal to stop, he answered with three blasts of his whistle, and then within 600 or 700 feet of the station, running about 20 to 25 miles an hour, he

shut off steam and put on the service brakes, to make the station stop. At this point he saw people coming out of the store and stop on the sidings, but he did not expect them to attempt to cross in front of the train. When within 100 to 150 feet of Twyman and Mrs. Cantwell, he saw them start .to run across the track. He immediately put on the emergency brake, but he was too close to avoid striking Twyman. He stopped the train fully 80 feet short of his regular station stop. He had entire control of the emergency brake, and the engineer on the second engine could not have aided in stopping the train. The engineer's testimony was corroborated by the second engineer, the two firemen, the conductor, and the baggage master; all testifying that they heard the signals given and felt the application of the air brake, both for the station stop and the emergency.

The length of the front engine and tender was about 60 feet. Experts for the defendant testified that the use of sand by the engineer would aid in the stopping of a train in an emergency, but that it would take about two seconds for the sand application to become effective. No effort was made by the engineer to use sand on this occasion. There was further expert testimony that a train traveling 20 miles an hour would go 107 feet after application of the emergency brake, and at 25 miles an hour it would travel 178 feet; that 20 to 25 miles an hour approaching a station was not an excessive speed, unless there were. children and cattle to be avoided at the station.

[1] It is difficult to find any evidence of negligence of the defendant contributing to the accident as ·a proximate cause; but, assuming that the condition of the track and the speed of the train was some evidence of such negligence, it is impossible to avoid the conclusion that contributory negligence of Twyman prevents recovery. The controlling and undisputed testimony for both plaintiff and defendant is that Twyman saw the approaching train almost upon him, hesitated, and stopped, and then, despite the warnings of three people, one of them catching his sleeve, that it would be dangerous to try to cross, attempted to beat the train in his race to the station platform. When he made the attempt, the front engine was only about 150 feet away, and the momentum of the train was such that it was impossible to bring it to a stop in time to save him. The result of his temerity in running a race with death cannot legally be put upon the railroad company. If one in such a position chooses to take chances, he must bear the consequences of failure.

[2] It is true that Twyman stood in the relation of an intending passenger, invited to the platform by the railroad company, to whom the railroad company owed a higher degree of care than a traveler at a crossing, and that, therefore, cases like Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542, Dernberger v. B. & O. R. Co., 243 Fed. 21, 155 C. C. A. 551, Bush v. B. & O. R. Co. (C. C. A.) 288 Fed. 845, Priester v. Southern Railway Co. (C. C. A.) 289 Fed. 945, Northern Pacific R. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014, and Schofield v. Chicago, Milwaukee & St. Paul R. Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224. relating to travelers on the highway, are not absolutely controlling. The distinction is pointed out in Warner v. Baltimore & Ohio R. Co., 168 U. S. 339, 18 Sup. Ct. 68, 42 L. Ed.

491, and in the cases cited in note in 13 L. R. A. (N. S.) 621. But the distinction does not extend to the exemption of an intending passenger from the result of taking the risk of running a race with an approaching train, plainly visible and very near at hand. We cite only a few of the many authorities so holding. Lowry v. Baltimore & Ohio R. Co., 74 W. Va. 791, 82 S. E. 1101; St. Louis, etc., R. Co. v. Whittle, 74 Fed. 296, 20 C. C. A. 196; Drawdy v. Atlantic Coast Line R. Co., 78 S. C. 374, 58 S. E. 980; Pendleton v. Richmond, etc., R. Co., 104 Va. 813, 52 S. E. 574; Pere Marquette R. Co. v. Strange, 171 Ind. 160, 84 N. E. 819, 85 N. E. 1026, 20 L. R. A. (N. S.) 1041; King v. Tenn. Cent. R. Co., 129 Tenn. 44, 164 S. W. 1181, 51 L. R. A. (N. S.) 618; Smith v. Gulf, etc., R. Co., 61 Tex. Civ. App. 225, 128 S. W. 1177; Dieckmann v. Chicago & N. W. R. Co. (Iowa) 105 N. W. 526; State ex rel. St. Louis, etc., R. Co. v. Reynolds, 289 Mo. 479, 233 S. W. 219; Weeks v. N. O., etc., R. Co., 40 La. Ann. 800, 5 South. 72, 8 Am. St. Rep. 560; Lebrenz v. Pennsylvania R. Co., 240 Pa. 495, 87 Atl. 847.

Affirmed.